Slip Op. 20-132

UNITED STATES COURT OF INTERNATIONAL TRADE

BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., AND KALIROY FRESH LLC,

    Plaintiffs,

v.

UNITED STATES,

    Defendant,

and

THE FLORIDA TOMATO EXCHANGE,

    Defendant-Intervenor.

Before: Jennifer Choe-Groves, Judge

Court Nos. 19-00204, 19-00210, 20-00035

**OPINION AND ORDER**

[Granting Defendant's motion to dismiss.]

    Dated: September 11, 2020

Jeffrey M. Winton, Michael Chapman, Amrietha Nellan, and Vi N. Mai, Winton & Chapman PLLC, of Washington, D.C., for Plaintiffs Bioparques de Occidente, S.A. de C.V., Agricola La Primavera, S.A. de C.V., and Kaliroy Fresh LLC.

Elizabeth Anne Speck, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. On the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel was Emma T. Hunter, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Jonathan M. Zielinski, Robert C. Cassidy, Jr., Charles S. Levy, James R. Cannon, Jr., Mary Jane Alves, and Chase J. Dunn, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for The Florida Tomato Exchange.

Choe-Groves, Judge:  Plaintiffs Bioparques de Occidente, S.A. de C.V., Agricola La Primavera, S.A. de C.V., and Kaliroy Fresh LLC ("Bioparques") filed identical complaints asserting different jurisdictional grounds in the following three actions challenging the final determination made in the antidumping duty investigation of fresh tomatoes from Mexico conducted by the U.S. Department of Commerce ("Commerce"), Fresh Tomatoes from Mexico, 84 Fed. Reg. 57,401 (Dep't Commerce Oct. 25, 2019) (final determination of sales at less than fair value): (1) Bioparques de Occidente, S.A. de C.V. v. United States, Court No. 19-00204; (2) Bioparques de Occidente, S.A. de C.V. v. United States, Court No. 19-00210; and (3) Bioparques de Occidente, S.A. de C.V. v. United States, Court No. 20-00035.[1]

Bioparques pleads jurisdiction in Court Nos. 19-00204 and 19-00210 under 28 U.S.C. § 1581(c) through separate provisions of 19 U.S.C. § 1516a, and alternatively under this Court's residual jurisdiction, 28 U.S.C. § 1581(i)(4).  Compl. ¶ 2.  Specifically, Bioparques filed Court No. 19-00204 under 19 U.S.C. § 1516a(a)(2)(A) and (B)(iv), id., which specifically refers to judicial review of "any final determination resulting from a continued investigation which changes the size of the dumping margin or net countervailable subsidy calculated, or the reasoning underlying such calculations, at the time the suspension agreement was concluded." Bioparques filed Court No. 19-00210 under the special rules applicable to appeals of final determinations involving NAFTA countries when review by a binational panel has not been requested, 19 U.S.C. § 1516a(g)(3)(A)(i), and pleaded alternatively residual jurisdiction under 28 U.S.C. § 1581(i)(4).  Compl. ¶ 2, Court No. 19-00210.  Bioparques filed Court No. 20-00035 under 28 U.S.C. § 1581(i) if the court found the claims presented in Court Nos. 19-00204 and

---

[1] For ease of reference and because the three complaints are generally identical, except in pleading jurisdiction, the court refers to the three complaints as the "Complaint" and, unless otherwise noted, cites only to the Complaint in the first-filed case, Court No. 19-00204.

19-00210 not cognizable under 19 U.S.C. § 1516a.  Compl. ¶ 2, Court No. 19-00210; Pls.' Resp. to Def.'s Mot. to Dismiss 3, ECF No. 34 ("Opp'n Br.").[2]

Before the court is the motion to dismiss filed by Defendant United States ("Defendant") pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction and USCIT Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Def.'s Mot. to Dismiss Br., ECF No. 30 ("Def. Br.").  Bioparques opposed.  Opp'n Br at 4–25.  Defendant replied.  Def.'s Am. Reply in Supp. of its Mot. to Dismiss Pls.' Compls., ECF No. 37 ("Def. Reply").[3]  For the reasons that follow, the court grants Defendant's motion to dismiss.

I.     BACKGROUND

A.  History of the Fresh Tomatoes from Mexico Antidumping Duty Proceeding

Commerce's investigation of fresh tomatoes has a long procedural history.  In April 1996, Commerce initiated an antidumping duty investigation to determine whether imports of fresh tomatoes from Mexico were being, or likely to be, sold in the United States at less than fair value.  Fresh Tomatoes from Mexico, 61 Fed. Reg. 18,377 (Dep't Commerce Apr. 25, 1996) (initiation of antidumping duty investigation).  After a preliminary determination from the International Trade Commission ("ITC"), Commerce made a preliminary determination that imports of fresh tomatoes from Mexico were being sold in the United States at less than fair value.  Compl. ¶ 6; Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,608 (Dep't Commerce Nov.

---

[2] Plaintiffs "believe that there is some ambiguity as to which of the relevant statutory provisions apply to [its] claims. . . .  [And] therefore filed redundant appeals under all three statutory provisions in order to ensure that, however the provisions might be interpreted, the Court would have jurisdiction to hear all of Plaintiffs' claims under at least one of the actions Plaintiffs filed."  Opp'n Br. at 4.

[3] Defendant-Intervenor The Florida Tomato Exchange "support[s] the entirety of the United States' motion and agree[s] with the arguments presented therein."  Def.-Intervenor's Resp. 2, ECF No. 33.

1, 1996) (preliminary determination). That same day, Commerce and certain growers and exporters who accounted for substantially all of the imports of fresh tomatoes from Mexico into the United States published a notice in the Federal Register announcing an agreement under 19 U.S.C. § 1673c(c) to suspend the antidumping duty investigation on fresh tomatoes from Mexico. Compl. ¶ 7; Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,618 (Dep't Commerce Nov. 1, 1996) (suspension of antidumping investigation). Commerce then instructed Customs and Border Protection ("CBP") to terminate the suspension of liquidation, release any bonds, and refund cash deposits. CBP Message No. 7327113 (Nov. 22, 1996); see Fresh Tomatoes from Mexico, 61 Fed. Reg. at 56,619.

After entering the suspension agreement in 1996, Commerce and the signatories[4] entered into a series of suspension agreements after the Mexican exporters and producers of fresh tomatoes gave notice of intent to withdraw from the operative suspension agreement in 2002, 2007, and 2013. Compl. ¶¶ 8–10; see Fresh Tomatoes from Mexico, 84 Fed. Reg. 20,858, 20,859–61 (Dep't Commerce May 13, 2019) (termination of suspension agreement, rescission of administrative review, and continuation of the antidumping duty investigation) ("May 2019 Withdrawal Notice") (explaining the history of the proceedings). Each time the signatory Mexican producers/exporters withdrew from the relevant suspension agreement in effect at that time, the parties negotiated and entered into a new suspension agreement, and, in 2002, 2008,

---

[4] The term "signatory" or "signatories" mentioned throughout the various suspension agreements refers to "producers/exporters accounting for substantially all imports of fresh tomatoes from Mexico." Fresh Tomatoes from Mexico, 84 Fed. Reg. 49,987, 49,987 (Dep't Commerce Sept. 24, 2019) (suspension of antidumping duty investigation); Fresh Tomatoes from Mexico, 78 Fed. Reg. 14,967, 14,968 (Dep't Commerce Mar. 8, 2013) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 73 Fed. Reg. 4831 (Dep't Commerce Jan. 28, 2008) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 67 Fed. Reg. 77,044 (Dep't Commerce Dec. 16, 2002) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 61 Fed. Reg. at 56,619.

and 2013, new suspension agreements went into effect.  <u>Fresh Tomatoes from Mexico</u>, 67 Fed. Reg. 77,044 (Dep't Commerce Dec. 16, 2002) (suspension of antidumping investigation); <u>Fresh Tomatoes from Mexico</u>, 73 Fed. Reg. 4831 (Dep't Commerce Jan. 28, 2008) (suspension of antidumping investigation); <u>Fresh Tomatoes from Mexico</u>, 78 Fed. Reg. 14,967 (Dep't Commerce Mar. 8, 2013) (suspension of antidumping investigation).

> **B. Commerce's Withdrawal from the 2013 Suspension Agreement, Continuation of the Underlying Investigation, and Signing of the 2019 Suspension Agreement**

Section VI.B of the 2013 Suspension Agreement allowed either party (Commerce or the Mexican signatories) to withdraw from that agreement upon giving 90 days' written notice. Commerce gave the signatory Mexican tomato growers and exporters notice of intent to withdraw from the 2013 Suspension Agreement on February 6, 2019.  <u>May 2019 Withdrawal Notice</u>, 84 Fed. Reg. at 20,860; <u>Fresh Tomatoes from Mexico</u>, 84 Fed. Reg. 7872, 7874 (Dep't Commerce Mar. 5, 2019) (notice of intent to terminate suspension agreement, rescind the sunset and administrative reviews, and resume the antidumping duty investigation).  Commerce then withdrew from the 2013 Suspension Agreement, effective May 7, 2019, and continued the underlying antidumping investigation.  Compl. ¶¶ 11–12; <u>May 2019 Withdrawal Notice</u>, 84 Fed. Reg. at 20,858.

Commerce published a notice in the Federal Register with an effective date of September 19, 2019, announcing that "Commerce and representatives of the signatory producers/exporters accounting for substantially all imports of fresh tomatoes from Mexico signed" an agreement to suspend the antidumping duty investigation.  <u>Fresh Tomatoes from Mexico</u>, 84 Fed. Reg. at 49,989; Compl. ¶ 13.  No party challenged Commerce's decision to suspend the investigation. The ITC also announced the suspension of its antidumping investigation as of September 24,

2019.  Fresh Tomatoes from Mexico, 84 Fed. Reg. 54,639 (Int'l Trade Comm'n Oct. 10, 2019) (suspension of anti-dumping investigation).

### C. Commerce's Final Determination

After signing the 2019 Suspension Agreement, Commerce received requests to continue its antidumping duty investigation under 19 U.S.C. § 1673c(g).  Compl. ¶ 13; Fresh Tomatoes from Mexico, 84 Fed. Reg. at 57,401.  On October 25, 2019, Commerce published its final determination in the continued investigation, finding that fresh tomatoes from Mexico were being, or likely to be, sold in the United States at less than fair value.  Compl. ¶ 13; Fresh Tomatoes from Mexico, 84 Fed. Reg. at 57,402.  The ITC issued an affirmative injury determination on December 12, 2019.  Fresh Tomatoes from Mexico, 84 Fed. Reg. 67,958 (Int'l Trade Comm'n Dec. 12, 2019) (notice of material injury determination).

### D. The Current Litigation

Bioparques filed the Summons in Court No. 19-00204 on November 22, 2019, ECF No. 1, and in Court No. 19-00210 on December 3, 2019, ECF No. 1.  Bioparques then filed the Complaint in Court No. 19-00204 on December 20, 2019, ECF No. 9, and in Court No. 19-00210 on December 23, 2019, ECF No. 9.  Bioparques filed the Summons and Complaint concurrently in Court No. 20-00035, ECF Nos. 1, 4, on February 5, 2020.

Bioparques alleges that "Commerce's final determination in [the underlying investigation] was arbitrary and capricious, unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]"  Compl. ¶ 14.  Specifically, Bioparques challenges Commerce's continuation of the investigation, respondent selection decision, differential pricing analysis, margin calculation methodology, and the calculation of general and administrative expenses.  Id.  As relief, Bioparques requests that the court find unlawful and vacate

Commerce's withdrawal from the 2013 Suspension Agreement and the final determination in the underlying fresh tomatoes investigation. Id. ¶ 15.

## II.　DISCUSSION

Article III of the Constitution limits federal courts to hearing actual, ongoing controversies. Davis v. FEC, 554 U.S. 724, 732 (2008). An actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed. Id. at 732–33; see DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (noting that the Court is "presumed to be without jurisdiction unless the contrary appears affirmatively from the record" (internal quotation marks and citations omitted)). "Though justiciability has no precise definition or scope, doctrines of standing, mootness, ripeness, and political question are within its ambit." Fisher v. United States, 402 F.3d 1167, 1176 (Fed. Cir. 2005).

The party invoking jurisdiction bears the burden of establishing it. Hutchinson Quality Furniture, Inc. v. United States, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (internal quotation marks and citation omitted). A plaintiff must allege sufficient facts to state each claim alleged in the complaint. DaimlerChrysler Corp., 442 F.3d at 1318–19 (citing, *inter alia*, McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." USCIT R. 12(h)(3).

Defendant argues that Bioparques' claims are not justiciable. Def. Br. at 13–20. Specifically, Defendant contends that Bioparques' challenge of Commerce's withdrawal from the 2013 Suspension Agreement and continuation of the underlying investigation is moot because Bioparques is a member of an association of Mexican exporters/producers of fresh tomatoes that signed the 2019 Suspension Agreement, and thus pays no antidumping duties. See Def. Br. at 14–15; Def. Reply at 8–10. Defendant also avers that Bioparques' claims are not ripe

for review because Bioparuqes cannot plead a cognizable injury stemming from a final determination that has no legal effect because of the extant suspension agreement, and has not identified how the court could redress the purported injury. Def. Br. at 19–20; Def. Reply at 6–8. Bioparques responds that although its complaint did not contain a specific count challenging the suspension agreement, the claims present a live controversy and that "the Court has the authority to vacate all actions by Commerce that flowed from the unlawful termination of the 2013 suspension agreement." Opp'n Br. at 23.

There is no "case or controversy" under Article III, and a suit becomes moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). The mootness doctrine applies when "events have so transpired that the [court's] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (citation omitted).

An action can avoid dismissal on mootness grounds if the claims asserted in the complaint are "capable of repetition, yet evading review." Spencer v. Kemna, 523 U.S. 1, 17 (1998); Torrington Co. v. United States, 44 F.3d 1572, 1577 (Fed. Cir. 1995) (citations omitted). "[T]he capable-of-repetition doctrine applies only in exceptional situations," when a plaintiff can show that "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Spencer, 523 U.S. at 17 (internal quotation marks and citations omitted); see Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d 568, 576 (D.C. Cir. 2010) ("The initial heavy burden of establishing mootness lies with the party

asserting a case is moot," yet "the opposing party bears the burden of showing an exception applies[.]").  Supreme Court precedent recognizes that "inherently transitory" claims are capable of evading review.  U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 399 (1980); e.g., Davis, 554 U.S. at 735 (election law challenge); Neb. Press Ass'n v. Stuart, 427 U.S. 539, 542 (1976) (imposing prior restraints on speech); Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975) (pretrial detention conditions).

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807–08 (2003) (internal quotation marks and citations omitted); Martin v. United States, 894 F.3d 1356, 1362 (Fed. Cir. 2018).  Two criteria guide a court in determining ripeness: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  Nat'l Park Hosp. Ass'n, 538 U.S. at 808.

Here, the court concludes that Bioparques' claims challenging the final determination are unripe.  Bioparques suffers no concrete or particularized injury from an as-yet-unpublished antidumping duty order that has no effect and may never have any effect so long as the 2019 Suspension Agreement remains in place.  For the same reason, Bioparques cannot meet the hardship requirement because Bioparques pays no antidumping duties as a member of the Asociación Mexicana de Horticultura Protegida, A.C. ("AMHPAC"), an association of

individual Mexican fresh tomato growers that is a signatory to the 2019 Suspension Agreement.[5] Fresh Tomatoes from Mexico, 84 Fed. Reg. at 49,994; see Compl. n.1, CAADES, Court No. 19-00203, ECF No. 14, Compl., Ex. 1, ECF No. 14-1 (identifying Bioparques de Occidente, S.A. de C.V. and Agricola La Primavera, S.A. de C.V. as members of AMHPAC and signatories to the 2019 Suspension Agreement).[6]

AMHPAC and the other associations of individual Mexican fresh tomato growers who signed the 2019 Suspension Agreement "certif[ied] that the members of their organization agree to abide by all terms of the Agreement." Fresh Tomatoes from Mexico, 84 Fed. Reg. at 49,994. Thus, Bioparques' challenge to the final determination does not present an actual case or controversy when Bioparques pays no duties as a signatory to the 2019 Suspension Agreement. See, e.g., Usinas Siderúrgicas de Minas Gerais S/A v. United States, 26 CIT 422, 431 (2002) ("A continued final affirmative determination [made after Commerce resumed an investigation after finalizing a suspension agreement] has no practical effect, unless and until the related suspension agreement is dissolved . . . . Thus, many of the same jurisprudential concerns that militate against piecemeal litigation also weigh against litigation of . . . a challenge which is not yet (and may never be) ripe.") ("Usinas").[7]

---

[5] AMHPAC is also a party plaintiff in cases challenging Commerce's withdrawal of the 2013 Suspension Agreement, finalization of the 2019 Suspension Agreement, and the final determination in the continued fresh tomatoes investigation in AMHPAC v. United States, Court No. 20-00036, and Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United, Court Nos. 19-00203 and 19-00206 ("CAADES").

[6] Section II.E of the 2019 Suspension Agreement identifies CAADES, AMHPAC, and three other entities as "a Mexican grower association whose members produce and/or export Fresh Tomatoes from Mexico and are also Signatories to this Agreement[.]" Fresh Tomatoes from Mexico, 84 Fed. Reg. at 49,990.

[7] Bioparques' reliance on the Court's decisions in CSC Sugar LLC v. United States, 43 CIT ___, 413 F. Supp. 3d 1318 (2019), and CSC Sugar LLC v. United States, 43 CIT ___, 413 F. Supp. 3d

The parties dispute whether the Complaint contains a challenge to the 2019 Suspension Agreement. Def. Br. at 11; Opp'n Br. at 6–7. Even if the Complaint included a count challenging the new suspension agreement, that type of pleading deficiency is of no moment because any claims that could have been raised under 28 U.S.C. § 1581(c) contesting Commerce's withdrawal from the 2013 Suspension Agreement, resumption of the underlying investigation, or signing of the 2019 Suspension Agreement became moot when Bioparques signed the 2019 Suspension Agreement. See Nasatka v. Delta Sci. Corp., 58 F.3d 1578, 1580 (Fed. Cir. 1995) ("The test for mootness . . . is whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]" (citation omitted)).[8] Accordingly, the court cannot condone Bioparques' litigation strategy in reaping the benefits of the 2019 Suspension Agreement while bringing an after-the-fact challenge to the final determination that currently has no impact and demanding that the court resurrect the 2013 Suspension Agreement when the claims here are not yet (and may never be) ripe.

The Mexican producers/exporters of fresh tomatoes may withdraw from the 2019 Suspension Agreement for any reason, or for no reason at all, and without penalty, under a similar withdrawal provision invoked three times before. In that event, Commerce would issue the antidumping duty order, but there is no logical scenario in which the superseded 2013

---

1310 (2019) is misplaced. Unlike here, the Court in CSC Sugar LLC vacated amendments to extant suspension agreements. 413 F. Supp. 3d at 1326; 413 F. Supp. 3d at 1318. Further, the plaintiff in CSC Sugar LLC, a domestic sugar refiner, was not a signatory to the operative suspension agreement.

[8] The court need not address Defendant's unanswered argument that no exception to the mootness doctrine applies here, Def. Br. at 17–19, beyond mentioning the absence of precedent or persuasive case law showing that this case is an "exceptional situation" in which the challenged actions are "capable of repetition, yet evading review." See Spencer, 523 U.S. at 17; Am. Spring Wire Corp. v. United States, 6 CIT 122, 124 (1983) (finding exception to mootness inapplicable because "[s]uspension agreements . . . will generally be of long duration").

Suspension Agreement would be reinstated.  As long as Plaintiffs remain signatories to the 2019 Suspension Agreement, the dumping margins will have no effect and will have no impact on Plaintiffs.

The court concludes that Bioparques' failure to plead an actual case or controversy compels dismissal.  Because Bioparques' claims are not ripe and are otherwise moot under USCIT Rule 12(b)(1), the court need not discuss the parties' arguments as to whether Bioparques' claims are time-barred or should be dismissed for failure to state a claim under USCIT Rule 12(b)(6).

### III.　　CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's motion to dismiss is granted and Plaintiffs' Complaints are dismissed with prejudice.  Judgment will enter accordingly.

　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Jennifer Choe-Groves
　　　　　　　　　　　　　　　　　　　　　　　　　　　Jennifer Choe-Groves, Judge

Dated:　September 11, 2020
　　　　　New York, New York