IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., and KALIROY FRESH LLC, <br><br> Plaintiffs, <br><br> and <br><br> CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, and SISTEMA PRODUCTO TOMATE, <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> THE FLORIDA TOMATO EXCHANGE, <br><br> Defendant-Intervenor. | Consol. Court No. 19-00204 |

ORDER

Upon consideration of defendant's motion to dismiss, and all other papers and proceedings had in this action, and upon due deliberation, it is hereby ORDERED that the motion is granted, and it is FURTHER ORDERED that the following claims are dismissed for lack of subject matter jurisdiction: (1) claims 1(a), 1(b), and 1(c) in *Bioparques de Occidente,*

Consol. Court No. 19-00204

*S.A. de C.V. v. United States*, No. 19-204; (2) claims 1(a), 1(b), and 1(c) in *Bioparques de Occidente, S.A. de C.V. v. United States*, No. 19-210; and (3) claims 1(a), 1(c), and 2 through 10 in *Bioparques de Occidente, S.A. de C.V. v. United States*, No. 20-35.

 SO ORDERED.


Dated: _____

 New York, NY            Jennifer Choe-Groves, Judge

- 2 -

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., and KALIROY FRESH LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, and SISTEMA PRODUCTO TOMATE, | ) ) ) ) ) ) ) | |
| Consolidated Plaintiffs, | ) ) | |
| v. | ) ) | Consol. Court No. 19-00204 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| THE FLORIDA TOMATO EXCHANGE, | ) ) | |
| Defendant-Intervenor. | ) ) | |

<u>DEFENDANT'S MOTION TO DISMISS</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

Of Counsel:

EMMA T. HUNTER
Assistant Chief Counsel
Office of the Chief Counsel for
    Trade Enforcement and Compliance
United States Department of Commerce

September 20, 2022

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendant

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES.................................................................................. ii

ISSUES PRESENTED ...................................................................................... 2

STATEMENT OF FACTS ................................................................................. 3

I.    History Of The Antidumping Proceeding Involving Fresh Tomatoes From Mexico ........ 3

II.    Commerce's Withdrawal From The 2013 Suspension Agreement And Continuation Of The Investigation................................................................................. 5

III.   The 2019 Suspension Agreement .................................................................. 6

IV.   A Brief History Of The Litigation................................................................... 6

V.    The Bioparques Claims .............................................................................. 10

SUMMARY OF THE ARGUMENT...................................................................... 10

ARGUMENT .................................................................................................. 11

I.    Standard Of Review ................................................................................. 11

II.    The Court Should Dismiss Many Of Bioparques' Claims For Lack Of Jurisdiction....... 12

    A.    Claim 1(b) In Bioparques Nos. 19-204 And 19-210 Should Be Dismissed......... 12

    B.    Claims 1(a) And 1(c) In Bioparques Nos. 19-204, 19-210, And 20-35 Should Be Dismissed...................................................................................... 13

    C.    All Remaining Claims In Bioparques No. 20-35 Should Be Dismissed ............. 14

CONCLUSION................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases:** **Page(s):**

*Bioparques de Occidente, S.A. de C.V. v. United States*, 470 F. Supp. 3d 1366
(Ct. Int'l Trade 2020) (*Bioparques I*) .............................................................. 7

*Bioparques De Occidente, S.A. de C.V. v. United States*,
31 F.4th 1336 (Fed. Cir. 2022) (*Bioparques II*) ........................................ 7, 9, 11, 13, 15

*Confederación de Asociaciones Agrícolas del Estado de Sinaloa, A.C. v. United
States*, 459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) (*CAADES I*) .................................... 7

*Confederación de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United
States*, 32 F.4th 1130 (Fed. Cir. 2022) (*CAADES II*) .................................. 7-15

*Erwin Hymer Grp. N. America, Inc. v. United States*, 930 F.3d 1370 (Fed. Cir. 2019) ... 12, 13, 14

*Ex Parte McCardle*, 74 U.S. (7 Wall.) 506 (1869) .................................... 11

*Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006) .................... 12, 13, 14

*Jem D Int'l (Mich.) Inc. USA v. United States*, 470 F. Supp.3d 1374 (Ct. Int'l Trade 2020)
(*Jem D I*) .................................................................................................. 7

*Jem D Int'l (Mich.) Inc. USA v. United States*, No. 2021-1292, 2022 U.S. App.
LEXIS 10044, 2022 WL 1112813 (Fed. Cir. Apr. 14, 2022) (*Jem D II*) ........... 7, 8, 11, 14

*Michael Simon Design, Inc. v. United States*, 637 F. Supp. 2d 1218 (Ct. Int'l Trade 2010) ....... 11

*Miller & Co. v. United States*, 824 F.2d 961 (Fed. Cir. 1987) ............................................ 13, 14

*Nippon Steel Corp. v. United States*, 219 F.3d 1348 (Fed. Cir. 2000) ...................................... 11

*Red Sun Farms v. United States*, 469 F. Supp. 3d 1403 (Ct. Int'l Trade 2020) (*Red Sun I*) .......... 7

*Red Sun Farms v. United States*, 30 F.4th 1358 (Fed. Cir. 2022) (*Red Sun II*) ........ 7-9, 11, 14, 15

*Sakar Int'l, Inc. v. United States*, 516 F.3d 1340 (Fed. Cir. 2008) ............................................ 11

*Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998) .......................................................... 11

*Sunpreme Inc. v. United States*, 892 F.3d 1186 (Fed. Cir. 2018) ............................................ 13, 14

**Statutes:**

19 U.S.C. § 1516a ........................................................................... 8, 9, 12, 13, 15

19 U.S.C. § 1517 ...................................................................................... 12

## TABLE OF AUTHORITIES (continued)

**Statutes (continued):**                                                                       **Page(s):**

19 U.S.C. § 1673b ............................................................................................... 3

19 U.S.C. § 1673c ............................................................................................ 5, 6

28 U.S.C. § 1581 ........................................................................................... 7-15

**Administrative Decisions:**

*Fresh Tomatoes from Mexico*, 84 Fed. Reg. 67,958 (Int'l Trade Comm'n Dec. 12, 2019)
    (affirmative injury determination) ................................................................. 6

*Fresh Tomatoes from Mexico*, 84 Fed. Reg. 57,401 (Dep't of Commerce Oct. 25, 2019)
    (final AD determination) ............................................................................ 6

*Fresh Tomatoes from Mexico*, 84 Fed. Reg. 54,639 (Int'l Trade Comm'n Oct. 10, 2019)
    (suspension of AD investigation) ................................................................. 6

*Fresh Tomatoes from Mexico*, 84 Fed. Reg. 49,987 (Dep't of Commerce Sept. 24, 2019)
    (2019 suspension of AD investigation) .......................................................... 6

*Fresh Tomatoes from Mexico*, 84 Fed. Reg. 20,858 (Dep't of Commerce May 13, 2019)
    (termination of 2013 suspension agreement) ............................................. 4, 5, 6

*Fresh Tomatoes from Mexico*, 84 Fed. Reg. 7,872 (Dep't of Commerce March 5, 2019)
    (notice of intent to terminate 2013 suspension agreement) ............................... 5

*Fresh Tomatoes from Mexico*, 78 Fed. Reg. 14,967 (Dep't of Commerce March 8, 2013)
    (2013 suspension of AD investigation) .......................................................... 4

*Fresh Tomatoes from Mexico*, 78 Fed. Reg. 14,771 (Dep't of Commerce March 7, 2013)
    (termination of 2008 suspension agreement) ............................................... 4, 5

*Fresh Tomatoes from Mexico*, 73 Fed. Reg. 4,831 (Dep't of Commerce Jan. 28, 2008)
    (2008 suspension of AD investigation) .......................................................... 4

*Fresh Tomatoes from Mexico*, 73 Fed. Reg. 2,887 (Dep't of Commerce Jan. 16, 2008)
    (termination of 2002 suspension agreement) ............................................... 4, 5

*Fresh Tomatoes from Mexico*, 67 Fed. Reg. 77,044 (Dep't of Commerce Dec. 16, 2002)
    (2002 suspension of AD investigation) .......................................................... 4

*Fresh Tomatoes from Mexico*, 67 Fed. Reg. 50,858 (Dep't of Commerce Aug. 6, 2002)
    (termination of 1996 suspension agreement) ............................................... 4, 5

**TABLE OF AUTHORITIES (continued)**

**Administrative Decisions (continued):**                                                    **Page(s):**

*Fresh Tomatoes from Mexico*, 61 Fed. Reg. 56,618 (Dep't of Commerce Nov. 1, 1996)
     (suspension of AD investigation)..............................................................3-4

*Fresh Tomatoes from Mexico*, 61 Fed. Reg. 56,608 (Dep't of Commerce Nov. 1, 1996)
     (preliminary AD determination) (1996 Preliminary Determination)....................3, 4, 5, 6

*Fresh Tomatoes from Mexico*, 61 Fed. Reg. 18,377 (Dep't of Commerce Apr. 25, 1996)
     (initiation of AD investigation)..........................................................3

**Rules:**

USCIT R. 12 ......................................................................................1, 11

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., and KALIROY FRESH LLC,<br><br>          Plaintiffs,<br><br>          and<br><br>CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, and SISTEMA PRODUCTO TOMATE,<br><br>          Consolidated Plaintiffs,<br><br>          v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>          and<br><br>THE FLORIDA TOMATO EXCHANGE,<br><br>          Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br><br>Consol. Court No. 19-00204 |

DEFENDANT'S MOTION TO DISMISS

          Pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade

(USCIT R.), defendant, the United States, respectfully requests that the Court dismiss the

following claims for lack of subject matter jurisdiction:  (1) claims 1(a), 1(b), and 1(c) in

*Bioparques de Occidente, S.A. de C.V. v. United States*, No. 19-204 (*Bioparques* No. 19-204);

(2) claims 1(a), 1(b), and 1(c) in *Bioparques de Occidente, S.A. de C.V. v. United States*, No. 19-210 (*Bioparques* No. 19-210); and (3) claims 1(a), 1(c), and 2 through 10 in *Bioparques de Occidente, S.A. de C.V. v. United States*, No. 20-35 (*Bioparques* No. 20-35). We are filing this motion because Bioparques has declined to conform its pleadings with recent decisions of the United States Court of Appeals for the Federal Circuit.[1]

<u>ISSUES PRESENTED</u>

1.      Whether claim 1(b) in *Bioparques* Nos. 19-204 and 19-210 should be dismissed for lack of jurisdiction under section 1581(c) because the Federal Circuit held that this Court possessed section 1581(i) jurisdiction to entertain (and dismiss) it in *Bioparques* No. 20-35.

2.      Whether claims 1(a) and 1(c) in *Bioparques* Nos. 19-204, 19-210, and 20-35 should be dismissed for lack of jurisdiction because the Federal Circuit held in a related case that the Court does not possess jurisdiction to entertain such challenges to an interim decision to resume an antidumping investigation.

3.      Whether all remaining claims in *Bioparques* No. 20-35 should be dismissed for lack of jurisdiction under section 1581(i) because the Federal Circuit held that the Court possesses section 1581(c) jurisdiction to entertain them in *Bioparques* Nos. 19-204 and 19-210.

---

[1]  In this motion, we refer to the following plaintiffs collectively as "Bioparques:" (1) Bioparques de Occidente, S.A. de C.V.; (2) Agricola La Primavera, S.A. de C.V.; and (3) Kaliroy Fresh LLC. We also refer to the following consolidated plaintiffs collectively as "CAADES": (1) Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C.; (2) Consejo Agricola de Baja California, A.C.; (3) Asociacion Mexicana de Horticultura Protegida, A.C.; (4) Asociacion de Productores de Hortalizas del Yaqui Y Mayo; and (5) Sistema Producto Tomate. Furthermore, we refer to defendant-intervenor Florida Tomato Exchange as "FTE." We also refer to the following parties in a related case (No. 19-127) collectively as "Jem D:" Jem D International (Michigan), Inc., USA; Jem D Marketing (Virginia), Inc.; Red Sun Farms Holdings USA, LLC; and Red Sun Farms Virginia, LLC. Finally, we refer to Red Sun Farms, a party in another related case (No. 19-205), as "Red Sun."

<u>STATEMENT OF FACTS</u>

I.   <u>History Of The Antidumping Proceeding Involving Fresh Tomatoes From Mexico</u>

This action stems from the Department of Commerce's (Commerce) suspended antidumping duty (AD) investigation concerning fresh tomatoes from Mexico.  In April 1996, based on a filed petition, Commerce initiated an investigation to determine whether imports of fresh tomatoes from Mexico were being, or were likely to be, sold in the United States at less than fair value.  *Fresh Tomatoes from Mexico*, 61 Fed. Reg. 18,377 (Dep't of Commerce Apr. 25, 1996) (initiation of AD investigation).

In October 1996, following a preliminary affirmative determination of the International Trade Commission (ITC), Commerce issued its preliminary determination in the investigation, finding that imports of fresh tomatoes from Mexico were being sold at less than fair value in the United States, and, in accordance with 19 U.S.C. § 1673b(d), announced that it would "suspend liquidation of all entries of fresh tomatoes from Mexico . . . and instruct [U.S. Customs and Border Protection (CBP)] to require a cash deposit or the posting of a bond." *Fresh Tomatoes from Mexico*, 61 Fed. Reg. 56,608, 56,615 (Dep't of Commerce Nov. 1, 1996) (preliminary AD determination) (1996 Preliminary Determination).  Commerce also explained that, in accordance with 19 U.S.C. § 1673d(a)(2)(a), based upon a request from five of the six mandatory respondents, it would postpone its final determination "until the 135th day after the date of the affirmative preliminary determination in the Federal Register." *Id.* at 56,609.

That same day, Commerce also announced that Commerce and the Mexican signatories had signed an agreement (1996 Suspension Agreement) to suspend the investigation, which would take effect 20 days after Commerce published the notice and that, as a result, it was "adjusting the security requirement from signatories to zero." *Fresh Tomatoes from Mexico*, 61

Fed. Reg. 56,618, 56,619 (Dep't of Commerce Nov. 1, 1996) (suspension of AD investigation). The term, "signatories," throughout the various suspension agreements at issue, has referred to the "signatory producers/exporters of fresh tomatoes from Mexico." *Id.*

Following the 1996 Suspension Agreement, Commerce and the Mexican signatories entered into a series of suspension agreements. Specifically, in 2002, 2007, and 2013, the Mexican signatories informed Commerce that they wished to withdraw from the suspension agreement in effect at that time, consistent with the withdrawal provision in each agreement.[2] Each time the Mexican signatories announced their withdrawal, Commerce terminated the suspension agreement, resumed the antidumping investigation, suspended liquidation, and instructed CBP to require a cash deposit or bond at the rate set forth in the 1996 Preliminary Determination.[3] Each time the Mexican signatories withdrew, however, the parties were able to negotiate a new agreement, and in 2002, 2008, and 2013, new suspension agreements went into effect, with an elimination of the cash deposit requirement and a corresponding refund of all cash deposits that CBP had collected since the resumption of the investigation.[4]

---

[2] *Fresh Tomatoes from Mexico*, 67 Fed. Reg. 50,858, 50,858-59 (Dep't of Commerce Aug. 6, 2002) (termination of suspension agreement, termination of sunset review, and resumption of AD investigation); *Fresh Tomatoes from Mexico*, 73 Fed. Reg. 2,887, 2,888-89 (Dep't of Commerce Jan. 16, 2008) (termination of suspension agreement, termination of sunset review, and resumption of AD investigation); *Fresh Tomatoes from Mexico*, 78 Fed. Reg. 14,771, 14,771 (Dep't of Commerce March 7, 2013) (termination of suspension agreement, termination of sunset review, and resumption of AD investigation); *see also Fresh Tomatoes from Mexico*, 84 Fed. Reg. 20,858, 20,859 n.9 (Dep't of Commerce May 13, 2019) (termination of suspension agreement, rescission of admin. review, and continuation of AD investigation) (explaining history of proceedings).

[3] *Fresh Tomatoes from Mexico*, 67 Fed. Reg. at 50,860; *Fresh Tomatoes from Mexico*, 73 Fed. Reg. at 2,889; *Fresh Tomatoes from Mexico*, 78 Fed. Reg. at 14,772.

[4] *Fresh Tomatoes from Mexico*, 67 Fed. Reg. 77,044, 77,046 (Dep't of Commerce Dec. 16, 2002) (suspension of AD investigation); *Fresh Tomatoes from Mexico*, 73 Fed. Reg. 4,831, 4,833 (Dep't of Commerce Jan. 28, 2008) (same); *Fresh Tomatoes from Mexico*, 78 Fed. Reg. 14,967, 14,968 (Dep't of Commerce March 8, 2013) (same) (2013 Suspension Agreement).

For Commerce, suspension of the investigation had the effect of resetting the clock for the deadline to complete the antidumping investigation, if resumed.  As a result, when Commerce resumed the antidumping investigation in 2002, 2008, and 2013, it treated the 1996 Preliminary Determination as if it had been published on the effective date of termination.  *Fresh Tomatoes from Mexico*, 67 Fed. Reg. at 50,859-60; *Fresh Tomatoes from Mexico*, 73 Fed. Reg. at 2,889; *Fresh Tomatoes from Mexico*, 78 Fed. Reg. at 14,772.  In other words, each time Commerce resumed the investigation, the agency indicated that it would issue the final determination in the investigation within 135 days.  *Id.*

II.     Commerce's Withdrawal From The 2013 Suspension Agreement And Continuation Of The Investigation

In March 2019, in accordance with section VI.B of the 2013 Suspension Agreement, Commerce notified the Mexican signatories that Commerce intended to withdraw from the 2013 Suspension Agreement no later than May 7, 2019, if the parties were unable to reach a new agreement.  *Fresh Tomatoes from Mexico*, 84 Fed. Reg. 7,872, 7,874 (Dep't of Commerce March 5, 2019) (intent to terminate suspension agreement and resume AD investigation).

On May 7, 2019, Commerce published a notice that it was withdrawing from the 2013 Suspension Agreement and resuming the investigation.  *Fresh Tomatoes from Mexico*, 84 Fed. Reg. 20,858 (Dep't of Commerce May 13, 2019) (termination of suspension agreement and continuation of AD investigation).  In the notice, Commerce explained that it was withdrawing from the agreement pursuant to section VI.B of the 2013 Suspension Agreement, which allowed Commerce to withdraw for any reason.  *Id.* at 20,860.  Commerce also explained that, because the antidumping statute "does not identify the timing for completion of the investigation in this particular scenario," Commerce was "looking to [19 U.S.C. § 1673c(i)(1)(B)]. . . for guidance."  *Id.*  Consistent with 19 U.S.C. § 1673c(i)(1)(B), Commerce stated that, "[a]s explained in its

1996 Preliminary Determination, Commerce previously postponed the final determination until

the 135th day after the date of the preliminary determination." *Id.* Thus, Commerce "intend[ed]

to issue its final determination 135 days after the effective date of withdrawal from and

termination of the 2013 Agreement, *i.e.*, by September 19, 2019, unless a new suspension

agreement becomes effective prior to or on this date." *Id.*

III.    The 2019 Suspension Agreement

On September 24, 2019, Commerce published a notice in the *Federal Register*, with an

effective date of September 19, 2019, announcing that it was suspending the investigation of

fresh tomatoes from Mexico on the basis of a new suspension agreement accepted by Commerce

and the Mexican signatories. *Fresh Tomatoes from Mexico*, 84 Fed. Reg. 49,987 (Dep't of

Commerce Sept. 24, 2019) (suspension of AD investigation) (2019 Suspension Agreement). The

ITC also announced that it was suspending its antidumping investigation as of September 24,

2019. *Fresh Tomatoes from Mexico*, 84 Fed. Reg. 54,639 (Int'l Trade Comm'n Oct. 10, 2019)

(suspension of AD investigation).

Commerce subsequently received timely requests to continue the investigation, so

Commerce continued the investigation pursuant to 19 U.S.C. § 1673c(g). *Fresh Tomatoes from

Mexico*, 84 Fed. Reg. 57,401, 57,402 (Dep't of Commerce Oct. 25, 2019) (final AD

determination). Commerce issued its final determination in the investigation on October 22,

2019. *Id.* at 57,401. The ITC also issued an affirmative injury determination on December 12,

2019. *Fresh Tomatoes from Mexico*, 84 Fed. Reg. 67,958 (Int'l Trade Comm'n Dec. 12, 2019)

(affirmative injury determination).

IV.    A Brief History Of The Litigation

Four sets of plaintiffs (Bioparques, CAADES, Jem D, and Red Sun) challenged,

variously, Commerce's withdrawal from the 2013 Suspension Agreement, Commerce's

continuation of the investigation, Commerce's negotiation of and entry into the 2019 Suspension

Agreement, and Commerce's final determination in the continued investigation. *See Bioparques*

*de Occidente, S.A. de C.V. v. United States*, 470 F. Supp. 3d 1366 (Ct. Int'l Trade 2020)

(*Bioparques I*); *Confederación de Asociaciones Agrícolas del Estado de Sinaloa, A.C. v. United*

*States*, 459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) (*CAADES I*); *Jem D Int'l (Mich.) Inc. USA v.*

*United States*, 470 F. Supp.3d 1374 (Ct. Int'l Trade 2020) (*Jem D I*); *Red Sun Farms v. United*

*States*, 469 F. Supp. 3d 1403 (Ct. Int'l Trade 2020) (*Red Sun I*).  This Court dismissed each of

these actions for lack of jurisdiction on ripeness and mootness grounds.  *Id.*  The Federal Circuit

affirmed the dismissal of all claims except for those challenging the final determination, which it

held may be reviewed pursuant to 28 U.S.C. § 1581(c).  *Bioparques De Occidente, S.A. de C.V.*

*v. United States*, 31 F.4th 1336 (Fed. Cir. 2022) (*Bioparques II*); *Confederación de Asociaciones*

*Agricolas del Estado de Sinaloa, A.C. v. United States*, 32 F.4th 1130 (Fed. Cir. 2022) (*CAADES*

*II*); *Jem D Int'l (Mich.) Inc. USA v. United States*, No. 2021-1292, 2022 U.S. App. LEXIS

10044, 2022 WL 1112813 (Fed. Cir. Apr. 14, 2022) (*Jem D II*); *Red Sun Farms v. United States*,

30 F.4th 1358 (Fed. Cir. 2022) (*Red Sun II*).

Specifically, in *CAADES II*, the Federal Circuit held that this Court possessed jurisdiction

to entertain CAADES' challenges to Commerce's termination of the 2013 Suspension

Agreement pursuant to 28 U.S.C. § 1581(i)(1)(D), that this Court also possessed jurisdiction to

entertain challenges to the 2019 Suspension Agreement pursuant to 28 U.S.C. § 1581(c), and that

those claims are not moot.  *CAADES II*, 32 F.4th at 1135, 1138-39, 1143.  However, the Federal

Circuit affirmed the dismissal of these claims on the merits because the termination of the 2013

Suspension Agreement was not invalid for failing to comply with statutory termination

requirements or for allegedly improper political influence, and because the 2019 Suspension

Agreement is not invalid on grounds of duress. *Id.* at 1135, 1139-44. The Federal Circuit also affirmed the dismissal of CAADES' claim challenging the resumption of the antidumping investigation because there is no independent jurisdiction to entertain challenges to that interim decision. *Id.* at 1145. With respect to CAADES' claims challenging the final determination, the Federal Circuit held that this Court possessed jurisdiction to entertain them notwithstanding the absence of an antidumping duty order. *Id.* at 1135, 1144. The Federal Circuit remanded for further proceedings consistent with *CAADES II*, *Bioparques II*, and *Red Sun II*. *Id.* at 1135, 1145.

In *Jem D II*, the Federal Circuit relied on *CAADES II* to hold that this Court possesses jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D) to entertain Jem D's challenges to the withdrawal from the 2013 Suspension Agreement, and those challenges are not moot but nevertheless fail to state a plausible claim for relief on the merits. *Jem D II*, 2022 U.S. App. LEXIS 10044, at *3-4. The Federal Circuit also relied on *CAADES II* to affirm the dismissal of Jem D's challenges to the resumption of the antidumping investigation because there is no independent jurisdiction to entertain challenges to that interim decision. *Id.* at *4. The Federal Circuit also affirmed the dismissal of Jem D's challenges to the 2019 Suspension Agreement because they were not timely filed. *Id.* at *4-6. Accordingly, the Federal Circuit affirmed this Court's judgment in *Jem D*. *Id.* at *6.

In *Red Sun II*, the Federal Circuit held that this Court possesses jurisdiction to entertain Red Sun's challenges to the final determination pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §§ 1516a(a)(2)(A)(i) and 1516a(a)(2)(B)(iv). *Red Sun II*, 30 F.4th at 1361-64. The Federal Circuit also ordered this Court to address whether the "Red Sun Farms" entity possessed the

capacity to maintain the suit. *Id.* at 1364-65. The Federal Circuit reversed and remanded for further proceedings consistent with *Red Sun II* and *Bioparques II*. *Id.* at 1365.

Finally, in *Bioparques II*, the Federal Circuit relied on *CAADES II* to hold that this Court possesses jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D) to entertain Bioparques' "materially identical challenges" to the withdrawal from the 2013 agreement, and those challenges are not moot but nevertheless fail to state a plausible claim for relief on the merits. *Bioparques II*, 31 F.4th at 1339, 1343, 1348. The Federal Circuit further held that this Court possesses jurisdiction to entertain challenges to the final determination pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §§ 1516a(g)(3)(A)(i) and 1516a(a)(2)(B)(i), and that those challenges are not moot. *Bioparques II*, 31 F.4th at 1343-48. Therefore, the Federal Circuit affirmed the dismissal of Bioparques' challenge to the withdrawal from the 2013 Suspension Agreement, reversed this Court's determination that Bioparques' challenges to the final determination are not justiciable, and remanded for further proceedings consistent with the Federal Circuit's determinations about the availability of statutory jurisdiction. *Id.* at 1348.

After the remands, Red Sun Farms voluntarily dismissed its case (No. 19-205). In addition, CAADES took appropriate steps to conform its claims to the Federal Circuit's decisions. Specifically, CAADES amended one of its complaints (No. 19-203) to eliminate all claims that did not challenge the final determination and to eliminate alternative jurisdictional allegations based upon 28 U.S.C. § 1581(i). *CAADES* No. 19-203, Joint Status Report at 4-5, Aug. 24, 2022, ECF No. 58. CAADES also voluntarily dismissed two other actions (Nos. 19-206 and 20-36). *Id.* at 3-4. Bioparques declined to take similar steps to conform its claims to the Federal Circuit's decisions.

V.    The Bioparques Claims

The claims in all three *Bioparques* complaints are identical, except that the complaints in

*Bioparques* Nos. 19-204 and 19-210 assert jurisdiction pursuant to 28 U.S.C. § 1581(c), whereas

the complaint in *Bioparques* No. 20-35 asserts jurisdiction pursuant to 28 U.S.C. § 1581(i).  Am.

Compl., *Bioparques* No. 19-204, Sept. 1, 2022, ECF No. 64; Am. Compl., *Bioparques* No. 19-

210, Sept. 1, 2022, ECF No. 69; Compl., *Bioparques* No. 20-35, Feb. 5, 2020, ECF No. 4.

Claims 1(a) and 1(c) challenge Commerce's decision to resume or continue the antidumping

investigation.  *Id.*  Claim 1(b) challenges the Government's withdrawal from the 2013

Suspension Agreement.  *Id.*  Claims 2 through 10 challenge various aspects of the final

determination.  *Id.*

SUMMARY OF THE ARGUMENT

Claims 2 through 10 in *Bioparques* Nos. 19-204 and 19-210 challenge the final

determination, assert jurisdiction pursuant to 28 U.S.C. § 1581(c), and are not the subject of this

motion to dismiss.  The remaining claims asserted by Bioparques are jurisdictionally unsound in

light of the Federal Circuit's decisions for three reasons.

First, claim 1(b) in *Bioparques* Nos. 19-204 and 19-210 challenges the withdrawal from

the 2013 Suspension Agreement and asserts jurisdiction pursuant to 28 U.S.C. § 1581(c),

notwithstanding the Federal Circuit's holdings in *CAADES II* that this Court does not possess

section 1581(c) jurisdiction to entertain the merits of that claim, and the merits of that claim

otherwise failed to state a plausible claim for relief invoking the Court's residual jurisdiction

pursuant to section 1581(i) in *Bioparques* No. 20-35.  *See CAADES II*, 32 F.4th at 1338, 1339-43.

Second, claims 1(a) and 1(c) in *Bioparques* Nos. 19-204, 19-210, and 20-35 challenge the

May 2019 decision by Commerce to resume or continue the antidumping investigation,

- 10 -

notwithstanding the Federal Circuit's holdings in *CAADES II* and *Jem D II* that there is no independent jurisdiction to entertain such challenges to that interim decision. *See CAADES II*, 32 F.4th at 1145; *Jem D II*, 2022 U.S. App. LEXIS 10044, at *4.

Third, the remaining claims in *Bioparques* No. 20-35 challenge the final determination and assert residual jurisdiction pursuant to 28 U.S.C. § 1581(i), notwithstanding the Federal Circuit's holdings in *Bioparques II* and *Red Sun II* that section 1581(c) jurisdiction exists. *See Bioparques II*, 31 F.4th at 1346-48; *Red Sun II*, 30 F.4th at 1361-64.

<u>ARGUMENT</u>

I.   <u>Standard Of Review</u>

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869); *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1352 (Fed. Cir. 2000) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex Parte McCardle*)); *Michael Simon Design, Inc. v. United States*, 637 F. Supp. 2d 1218, 1223 (Ct. Int'l Trade 2010) (quoting *Ex Parte McCardle*). Rule 12(b)(1) provides that "a party may assert … by motion" the defense of "lack of subject-matter jurisdiction." USCIT R. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." USCIT R. 12(h)(3).

The United States "Court of International Trade, like all federal courts, is a court of limited jurisdiction." *Sakar Int'l, Inc. v. United States*, 516 F.3d 1340, 1349 (Fed. Cir. 2008). Title 28, United States Code, section 1581 governs the Court's subject matter jurisdiction in customs and trade cases against the United States. 28 U.S.C. § 1581. Section 1581(c) provides that this Court "shall have exclusive jurisdiction of any civil action commenced under" 19

U.S.C. §§ 1516a or 1517. 28 U.S.C. § 1581(c). Section 1581(i) also provides a source of residual jurisdiction for this Court to entertain "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement" of the trade laws. 28 U.S.C. § 1581(i)(1)(D). However, residual jurisdiction under section 1581(i) is "strictly limited" and may not be invoked "when jurisdiction under another subsection of section 1581 is or could have been available, unless the remedy provided under the other subsection would be manifestly inadequate." *Erwin Hymer Grp. N. America, Inc. v. United States*, 930 F.3d 1370, 1374-75 (Fed. Cir. 2019) (citations omitted); *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (citations omitted).

II.    The Court Should Dismiss Many Of Bioparques' Claims For Lack Of Jurisdiction

A.    Claim 1(b) In *Bioparques* Nos. 19-204 And 19-210 Should Be Dismissed

In claim 1(b) of their amended complaints in *Bioparques* Nos. 19-204 and 19-210, plaintiffs challenge the Government's withdrawal from the 2013 Suspension Agreement and assert jurisdiction pursuant to 28 U.S.C. § 1581(c). Am. Compl. ¶ 14(1)(b), *Bioparques* No. 19-204, Sept. 1, 2022, ECF No. 64; Am. Compl. ¶ 14(1)(b), *Bioparques* No. 19-210, Sept. 1, 2022, ECF No. 69.[5] These claims should be dismissed because Bioparques' assertion of section 1581(c) jurisdiction is inconsistent with controlling Federal Circuit precedent.

In *CAADES II*, the Federal Circuit held that the correct jurisdictional ground for a challenge to the Government's withdrawal from a suspension agreement is section 1581(i), not section 1581(c). *CAADES II*, 32 F.4th at 1138. The Federal Circuit explained that "[r]esidual jurisdiction under § 1581(i) is not available if the determination the plaintiff seeks to challenge is

---

[5]    In claim 1(b) of their complaint in *Bioparques* No. 20-35, plaintiffs challenge the Government's withdrawal from the 2013 Suspension Agreement but assert jurisdiction pursuant to 28 U.S.C. § 1581(i). Compl. ¶ 13(1)(b), *Bioparques* No. 20-35, Feb. 5, 2020, ECF No. 4.

already reviewable by the Trade Court under § 1516a(a), or by a binational panel under

§ 1516a(g)."  *Id.*  The Federal Circuit elaborated that a "decision by Commerce to terminate a

suspension agreement is absent from the list of reviewable determinations identified in

§ 1516a(a)(2)(B)" and "is not reviewable by a binational panel under § 1516a(g)."  *Id.*

Accordingly, the Federal Circuit held that a challenge to the Government's withdrawal from the

2013 Suspension Agreement must be reviewed under the "residual provision" for jurisdiction

under section 1581(i).  *Id.*  Nevertheless, the Federal Circuit affirmed this Court's dismissal of

that claim because it failed to state a plausible claim for relief on the merits.  *Id.* at 1139-43.  In

*Bioparques II*, the Federal Circuit relied on *CAADES II* to hold that this Court possesses

jurisdiction pursuant to 28 U.S.C. § 1581(i) to entertain Bioparques' "materially identical

challenges" to the Government's withdrawal from the 2013 agreement, but that Bioparques also

had failed to state a plausible claim for relief on the merits.  *Bioparques II*, 31 F.4th at 1339,

1343, 1348.

    Because the Federal Circuit has held that the correct jurisdictional ground for claim 1(b)

is section 1581(i), Bioparques cannot simultaneously maintain claim 1(b) insofar as it asserts

jurisdiction under section 1581(c).  *See, e.g., Erwin Hymer*, 930 F.3d at 1374-75; *Sunpreme Inc.*

*v. United States*, 892 F.3d 1186, 1191-92 (Fed. Cir. 2018); *Int'l Custom Prods.*, 467 F.3d at

1327; *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987).  Accordingly, the Court

should dismiss claim 1(b) in *Bioparques* Nos. 19-204 and 19-210.

    B.    Claims 1(a) And 1(c) In *Bioparques* Nos. 19-204, 19-210, And 20-35 Should Be
          Dismissed

    In claims 1(a) and 1(c) in *Bioparques* Nos. 19-204, 19-210, and 20-35, plaintiffs

challenge Commerce's decision to resume or continue the antidumping investigation.  In

*CAADES II*, the Federal Circuit held that there is no independent jurisdiction to entertain such

challenges to an interim decision. *See CAADES II*, 32 F.4th at 1145; *see also Jem D II*, 2022 U.S. App. LEXIS 10044, at *4 (following *CAADES II*).  CAADES had alleged that "Commerce had no authority to continue its antidumping duty investigation beginning May 7, 2019."  Compl. ¶¶ 60-62, *CAADES* No. 19-203, Dec. 20, 2019, ECF No. 14.  Here, Bioparques similarly alleges that "Commerce lacked authority to resume or continue the investigation."  Am. Compl. ¶ 14(1), *Bioparques* No. 19-204, Sept. 1. 2022, ECF No. 64; Am. Compl. ¶ 14(1), *Bioparques* No. 19-210, Sept. 1, 2022, ECF No. 69; Compl. ¶ 13(1), *Bioparques* No. 20-35, Feb. 5, 2020, ECF No. 4.  In accordance with the Federal Circuit's decision in *CAADES II*, claims 1(a) and 1(c) in *Bioparques* Nos. 19-204, 19-210, and 20-35 should be dismissed for lack of jurisdiction.

      C.     <u>All Remaining Claims In *Bioparques* No. 20-35 Should Be Dismissed</u>

      The Federal Circuit affirmed the dismissal of claim 1(b) in *Bioparques* No. 20-35 because it failed to state a plausible claim for relief on the merits.  *Bioparques II*, 31 F.4th at 1339, 1343, 1348 (following *CAADES II*, 32 F.4th at 1139-43).  The remaining claims in *Bioparques* No. 20-35 challenge the final determination and assert residual jurisdiction pursuant to 28 U.S.C. § 1581(i).  Compl. ¶ 13, *Bioparques* No. 20-35, Feb. 5, 2020, ECF No. 4.  The claims in *Bioparques* Nos. 19-204 and 19-210 also challenge the final determination but assert jurisdiction pursuant to 28 U.S.C. § 1581(c).  Am. Compl. ¶ 14, *Bioparques* No. 19-204, Sept. 1. 2022, ECF No. 64; Am. Compl. ¶ 14, *Bioparques* No. 19-210, Sept. 1, 2022, ECF No. 69.  As noted above, Bioparques cannot simultaneously assert jurisdiction over the remaining claims under section 1581(c) *and* section 1581(i).  *See, e.g.*, *Erwin Hymer*, 930 F.3d at 1374-75; *Sunpreme*, 892 F.3d at 1191-92; *Int'l Custom Prods.*, 467 F.3d at 1327; *Miller*, 824 F.2d at 963.

      In *Bioparques II* and *Red Sun II*, the Federal Circuit held that the correct jurisdictional ground for challenges to the final determination is section 1581(c), not section 1581(i).  *See*

*Bioparques II*, 31 F.4th at 1346-48; *Red Sun II*, 30 F.4th at 1361-64. Specifically, in *Bioparques II*, the Federal Circuit held that this Court possesses jurisdiction to entertain challenges to the final determination pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(g)(3)(A)(i) as an action arising from a determination under § 1516a(a)(2)(B)(i). *Bioparques II*, 31 F.4th at 1346-48. *Bioparques* No. 19-210 asserts this jurisdictional ground. Am. Compl. ¶ 2, *Bioparques* No. 19-210, Sept. 1, 2022, ECF No. 69. Likewise, in *Red Sun II*, the Federal Circuit held that this Court possesses jurisdiction to entertain challenges to the final determination pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §§ 1516a(a)(2)(A) and (B)(iv). *Red Sun II*, 30 F.4th at 1361-64. *Bioparques* No. 19-204 asserts this jurisdictional ground. Am. Compl. ¶ 2, *Bioparques* No. 19-204, Sept. 1. 2022, ECF No. 64. In *CAADES II*, the Federal Circuit held that "[r]esidual jurisdiction under § 1581(i) is not available if the determination the plaintiff seeks to challenge is already reviewable by the Trade Court under § 1516a(a), or by a binational panel under § 1516a(g)." *CAADES II*, 32 F.4th at 1138.

Because the Federal Circuit has held that the correct jurisdictional ground for all claims challenging the final determination is section 1581(c), Bioparques cannot maintain those challenges pursuant to section 1581(i). Accordingly, the Court should dismiss all remaining claims in *Bioparques* No. 20-35.

CONCLUSION

For these reasons, the United States respectfully requests that the Court dismiss the following claims for lack of subject matter jurisdiction: (1) claims 1(a), 1(b), and 1(c) in *Bioparques* No. 19-204; (2) claims 1(a), 1(b), and 1(c) in *Bioparques* No. 19-210; and (3) claims 1(a), 1(c), and 2 through 10 in *Bioparques* No. 20-35.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

 s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Of Counsel:                                      Senior Trial Counsel
                                                 Commercial Litigation Branch
EMMA T. HUNTER                                   Civil Division
Assistant Chief Counsel                          United States Department of Justice
Office of the Chief Counsel for                  P.O. Box 480, Ben Franklin Station
     Trade Enforcement and Compliance            Washington, DC 20044
United States Department of Commerce             Tel: (202) 353-9303

September 20, 2022                               Attorneys for Defendant

<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International

Trade Standard Chambers Procedures § 2(B)(1) and contains 4,472 words, excluding the parts of

the brief exempted from the word limitation.  In preparing this certificate of compliance, I have

relied upon the word count function of the word processing system used to prepare the brief.

<u>s/ Douglas G. Edelschick</u>