Slip Op. 24-45

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., AND KALIROY FRESH LLC,**<br><br>        **Plaintiffs,**<br><br>**CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, AND SISTEMA PRODUCTO TOMATE,**<br><br>        **Consolidated Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>        **Defendant,**<br><br>**and**<br><br>**THE FLORIDA TOMATO EXCHANGE,**<br><br>        **Defendant-Intervenor.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Consol. Court No. 19-00204** |

**OPINION AND ORDER**

[Remanding the U.S. Department of Commerce's resumed antidumping duty investigation of fresh tomatoes from Mexico.]

Dated:  April 17, 2024

Jeffrey M. Winton, Michael J. Chapman, Amrietha Nellan, Jooyoun Jeong, Ruby Rodriguez, and Vi N. Mai, Winton & Chapman PLLC, of Washington, D.C., for Plaintiffs Bioparques de Occidente, S.A. de C.V., Agricola La Primavera, S.A. de C.V., and Kaliroy Fresh LLC.

Bernd G. Janzen, Devin S. Sikes, Paul S. Bettencourt, and Yujin K. McNamara, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, D.C., for Consolidated Plaintiffs Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C., Consejo Agricola de Baja California, A.C., Asociacion Mexicana de Horticultura Protegida, A.C., Asociacion de Productores de Hortalizas del Yaqui y Mayo, and Sistema Producto Tomate.

Douglas G. Edelschick, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With him on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director.  Of counsel was Emma T. Hunter, Assistant Chief Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Robert C. Cassidy, Jr., Charles S. Levy, Chase J. Dunn, James R. Cannon, Jr., Mary Jane Alves, Jonathan M. Zielinski, and Nicole Brunda, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor The Florida Tomato Exchange.

Choe-Groves, Judge:  This case involving imported fresh tomatoes from

Mexico spans 28 years.  In summary, the U.S. Department of Commerce

("Commerce") initiated an investigation into whether fresh tomatoes from Mexico

were being sold in the United States at less than fair value.  Commerce issued a

preliminary determination in 1996 that the Mexican tomatoes were being, or were likely to be, sold in the U.S. at less than fair value.

Commerce and the Mexican tomato growers entered into a series of agreements (in 1996, 2002, 2008, and 2013) to suspend the investigation for over two decades. In May of 2019, Commerce withdrew from the 2013 suspension agreement. Commerce and the Mexican tomato growers entered into a new agreement to suspend the investigation in September 2019. In October 2019, the U.S. domestic tomato growers requested that Commerce resume the suspended investigation.

Commerce resumed the investigation in October 2019, selected new mandatory respondents, and collected new economic data from 2018 and 2019. Commerce issued a final determination on October 25, 2019. No antidumping duty order was issued because according to the U.S. Court of Appeals for the Federal Circuit ("CAFC") in Bioparques de Occidente, S.A. de C.V. v. United States ("Bioparques II"), 31 F.4th 1336, 1343–48 (Fed. Cir. 2022), the 2019 suspension agreement still "remains in effect."[1]

---

[1] This Court previously dismissed the complaints in these cases under USCIT Rule 12(b)(1) for lack of subject matter jurisdiction because an antidumping duty order had not been issued under the terms of the 2019 suspension agreement. The CAFC affirmed in part and remanded in part. Bioparques II, 31 F.4th at 1343–48. The CAFC held that an affirmative final determination in a continued investigation that involves exports from a Free Trade Agreement country is reviewable by the U.S.

Commerce explained that notwithstanding its October 2019 continuation and completion of the investigation, and issuance of a final determination, the 2019 suspension agreement remains in effect. Commerce stated in its final determination that it would not issue an antidumping duty order so long as the 2019 agreement remains in force, continues to meet the requirements of section 734(c) and (d) of the Tariff Act of 1930, as amended, and the parties to the agreement carry out their obligations under the 2019 agreement in accordance with its terms.

The Court now reviews the Final Determination from October 2019. Fresh Tomatoes from Mexico ("Final Determination"), 84 Fed. Reg. 57,401 (Dep't of Commerce Oct. 25, 2019) (final determination of sales at less than fair value), and accompanying Final Issues and Decisions Memorandum ("Final IDM"), PR 496.[2] The Mexican tomato growers argue that Commerce should have used the original data collected from 1995 and 1996 when it resumed the suspended investigation 23 years later, and Defendant and Defendant-Intervenor contend that Commerce was permitted to use new data collected from new respondents when it reinitiated the

---

Court of International Trade. The CAFC also recognized that the 2019 suspension agreement is in effect and remains in force and valid.

[2] Citations to the administrative record reflect the public record ("PR") document numbers filed in this case, ECF No. 100.

1996 investigation in 2019. For the reasons explained below, the Court remands the Final Determination for further consideration.

Plaintiffs Bioparques de Occidente, S.A. de C.V. ("Bioparques"), Agricola La Primavera, S.A. de C.V. ("Agricola La Primavera"), and Kaliroy Fresh LLC (collectively, "Plaintiffs") and Consolidated Plaintiffs Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C., Consejo Agricola de Baja California, A.C., Asociacion Mexicana de Horticultura Protegida, A.C., Asociacion de Productores de Hortalizas del Yaqui y Mayo, and Sistema Producto Tomate (collectively, "Consolidated Plaintiffs"), challenge the final determination in the antidumping duty investigation of fresh tomatoes from Mexico conducted by Commerce. Final Determination; Compl., ECF No. 9; Am. Compl., ECF No. 64; see also Compl., Court No. 19-00203, ECF No. 14; Am. Compl., Court No. 19-00203, ECF No. 59; Compl., Court No. 19-00210, ECF No. 9; Am. Compl., Court No. 19-00210, ECF No. 69. Before the Court are Consolidated Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record and Amended Rule 56.2 Motion for Judgment on the Agency Record and Plaintiffs' Motion for Judgment on the Agency Record. Consol. Pls.' R. 56.2 Mot. J. Agency R., ECF No. 81; Mot. Pls. J. Agency R., ECF Nos. 82, 83; Consol. Pls.' Am. R. 56.2 Mot. J. Agency R. ("Consol. Pls.' Br."), ECF No. 92; see also Br. Pls. Supp. R. 56.2 Mot. J. Agency R. ("Pls.' Br."), ECF Nos. 82-1, 83-1. Defendant United States filed Response of

Defendant United States to Plaintiffs' and Consolidated Plaintiffs' Rule 56.2 Motions for Judgment on the Agency Record. Resp. Def. Pls.' Consol. Pls.' R. 56.2 Mot. J. Agency R. ("Def.'s Br."), ECF No. 93. Defendant-Intervenor The Florida Tomato Exchange ("Defendant-Intervenor") filed its Response Opposing Plaintiffs' Motion for Judgment on the Agency Record. Def.-Interv.'s Resp. Opp'n Pls.' Mot. J. Agency R. ("Def.-Interv.'s Br."), ECF Nos. 94, 95. Plaintiffs filed Reply Brief of Plaintiffs. Reply Br. Pls. ("Pls.' Reply"), ECF No. 98. Consolidated Plaintiffs filed Consolidated Plaintiffs' Reply Brief in Support of its Amended Rule 56.2 Motion for Judgment on the Agency Record. Consol. Pls.' Reply Br. Supp. Am. R. 56.2 Mot. J. Agency R. ("Consol. Pls.' Reply"), ECF No. 99.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history set forth in its prior Orders and Opinions and recounts the facts relevant to the Court's review of the pending motions. See Bioparques de Occidente, S.A. de C.V. v. United States ("Bioparques III"), 47 CIT __, __, 633 F. Supp. 3d 1340, 1343–45 (2023); Bioparques de Occidente, S.A. de C.V. v. United States ("Bioparques I"), 44 CIT __, __, 470 F. Supp. 3d 1366, 1368–70 (2020).

## I.    Antidumping Duty Investigation and Suspension Agreements

In April 1996, Commerce initiated an antidumping duty investigation to determine whether imports of fresh tomatoes from Mexico were being, or were likely to be, sold in the United States at less than fair value.  Fresh Tomatoes from Mexico, 61 Fed. Reg. 18,377 (Dep't of Commerce Apr. 25, 1996) (initiation of antidumping duty investigation).  After an affirmative preliminary injury determination from the U.S. International Trade Commission ("ITC"), Commerce made a preliminary determination that imports of fresh tomatoes from Mexico were being sold in the United States at less than fair value.  Fresh Tomatoes from Mexico ("Preliminary Determination"), 61 Fed. Reg. 56,608 (Dep't of Commerce Nov. 1, 1996) (notice of preliminary determination of sales at less than fair value and postponement of final determination).  Concurrent with Commerce's preliminary determination, Commerce published a notice in the Federal Register announcing an agreement under 19 U.S.C. § 1673c(c) with certain producers and exporters who accounted for substantially all of the imports of fresh tomatoes from Mexico into the United States to suspend the antidumping duty investigation on fresh tomatoes from Mexico.  Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,618 (Dep't of Commerce Nov. 1, 1996) (suspension of antidumping investigation). Between 1996 and 2013, Commerce and the producers and exporters of tomatoes from Mexico entered into three further suspension agreements.  See Fresh

Tomatoes from Mexico, 67 Fed. Reg. 77,044 (Dep't of Commerce Dec. 16, 2002)

(suspension of antidumping investigation); Fresh Tomatoes from Mexico, 73 Fed.

Reg. 4831 (Dep't of Commerce Jan. 28, 2008) (suspension of antidumping

investigation); Fresh Tomatoes from Mexico ("2013 Suspension Agreement"), 78

Fed. Reg. 14,967 (Dep't of Commerce Mar. 8, 2013) (suspension of antidumping

investigation).

Commerce gave notice to the signatory growers on February 6, 2019 of

Commerce's intent to withdraw from the 2013 Suspension Agreement. Fresh

Tomatoes from Mexico, 84 Fed. Reg. 7872, 7874 (Dep't of Commerce Mar. 5,

2019) (intent to terminate suspension agreement, rescind the sunset and

administrative reviews, and resume the antidumping duty investigation); Fresh

Tomatoes from Mexico ("May 2019 Withdrawal Notice"), 84 Fed. Reg. 20,858,

20,860 (Dep't of Commerce May 13, 2019) (termination of suspension agreement,

rescission of administrative review, and continuation of the antidumping duty

investigation). Commerce withdrew from the 2013 Suspension Agreement on May

7, 2019 and resumed the underlying antidumping investigation. May 2019

Withdrawal Notice, 84 Fed. Reg. at 20,860.

Commerce published a notice on September 24, 2019 that a new suspension

agreement had been reached between Commerce and the signatory parties and that

the antidumping duty investigation had been suspended. Fresh Tomatoes from

Mexico ("2019 Suspension Agreement"), 84 Fed. Reg. 49,987, 49,989 (Dep't of

Commerce Sept. 24, 2019) (suspension of antidumping duty investigation).  The

ITC subsequently announced the suspension of its antidumping investigation.

Fresh Tomatoes from Mexico, 84 Fed. Reg. 54,639 (ITC Oct. 10, 2019)

(suspension of antidumping investigation).

In October 2019, U.S. domestic tomato industry representatives requested

that Commerce continue the investigation.  In response to these requests,

Commerce "continued and completed this investigation in accordance with section

734(g) of the Tariff Act of 1930, as amended."  Final Determination, 84 Fed. Reg.

at 57,402.  Commerce published its affirmative Final Determination on October

25, 2019, determining that fresh tomatoes from Mexico were being, or were likely

to be, sold in the United States at less than fair value.  Id.  The ITC issued an

affirmative injury determination on December 12, 2019.  Fresh Tomatoes from

Mexico, 84 Fed. Reg. 67,958 (ITC Dec. 12, 2019).  As noted earlier, no

antidumping duty order has been issued.

## II.    Litigation

Plaintiffs filed three separate actions challenging Commerce's continued

investigation and Final Determination, beginning with filing the Summons in Court

Number 19-00204 on November 22, 2019 and in Court Number 19-00210 on

December 3, 2019.  Summons, ECF No. 1; Summons, Court No. 19-00210, ECF

No. 1.  Plaintiffs filed the Complaint in Court Number 19-00204 on December 20, 2019 and the Complaint in Court Number 19-00210 on December 23, 2019. Compl., ECF No. 9; Compl., Court No. 19-00210.  Plaintiffs filed the Summons and Complaint concurrently in Court Number 20-00035 on February 5, 2020. Summons, Court No. 20-00035, ECF No. 1; Compl., Court No. 20-00035, ECF No. 4.

Plaintiffs allege ten causes of action.[3]  See Am. Compl. at 6–8; Am. Compl. at 6–8, Court No. 19-00210; Compl. at 6–7, Court No. 20-00035.  Specifically, Plaintiffs challenge as unlawful Commerce's withdrawal from the 2013 Suspension Agreement (claim 1(b)); Commerce's resumption of the suspended antidumping duty investigation (claims 1(a) and 1(c)); Commerce's ending of the investigation into the respondents that were the subject of Commerce's 1996 preliminary determination and selection of new respondents for the continued investigation (claim 2); the procedures Commerce followed in the resumed investigation (claim 3); and the correctness of certain aspects of the Final Determination (claims 4–10).  Am. Compl. at 6–8; Am. Compl. at 6–8, Court No. 19-00210; Compl. at 6–7, Court No. 20-00035.  In all, Plaintiffs ask the Court to

---

[3]  Though otherwise identical to the claims asserted in Court Numbers 19-00204 and 19-00210, Plaintiffs' Complaint in Court Number 20-00035 does not include a count 10.  See Compl. at 7, Court No. 20-00035.

declare unlawful and vacate Commerce's withdrawal from the 2013 Suspension

Agreement and the subsequent Final Determination.  Am. Compl. at 8; Am.

Compl. at 8, Court No. 19-00210; Compl. at 7, Court No. 20-00035.

     Defendant filed motions to dismiss pursuant to USCIT Rule 12(b)(1) for

lack of subject matter jurisdiction and USCIT Rule 12(b)(6) for failure to state a

claim upon which relief can be granted in each of the cases.  Def.'s Mot. Dismiss,

ECF No. 30; Def.'s Mot. Dismiss, Court No. 19-00210, ECF No. 31; Def.'s Mot.

Dismiss, Court No. 20-00035, ECF No. 20.  The Court granted the motions and

dismissed Plaintiffs' claims with prejudice.  Bioparques I, 44 CIT at __, 470 F.

Supp. 3d at 1373.

### III.    Appeal

     Plaintiffs appealed the Court's judgment to the CAFC.  Pls.' Notice of

Appeal, ECF No. 47.  The CAFC affirmed in part and remanded in part.

Bioparques II, 31 F.4th at 1343–48.  The CAFC affirmed the dismissal of

Plaintiffs' claims challenging the termination of the 2013 Suspension Agreement

and the negotiation of the 2019 Suspension Agreement.  Id. at 1343.  The CAFC

also held that because the Final Determination constituted "an affirmative final

determination in a continued investigation that involves exports from [a free trade

agreement] country"[4] and is reviewable under 19 U.S.C. § 1516a(g)(3)(A)(i), the

Court has jurisdiction to consider Plaintiffs' challenges to the <u>Final Determination</u>

under 28 U.S.C. § 1581(c). <u>Id.</u> at 1346–48.

On remand, the Court consolidated Plaintiffs' three cases with the related

case <u>Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C. et al v.</u>

<u>United States,</u> Court No. 19-00203. Consol. Order (Sept. 1, 2022), ECF No. 63.

Plaintiffs filed Amended Complaints on September 1, 2022 in Court Numbers 19-

00204 and 19-00210. Am. Compl.; Am. Compl., Court No. 19-00210.

## IV.   Motions to Dismiss

On remand, Defendant and Defendant-Intervenor filed motions to dismiss,

seeking dismissal of the remaining claims of Plaintiffs and Plaintiff-Intervenors for

lack of subject matter jurisdiction. Def.'s Mot. Dismiss, ECF No. 65; Def.-

Interv.'s Mot. Dismiss, ECF No. 66. The Court granted the motions in part and

dismissed Plaintiffs' and Plaintiff-Intervenors' claims 1(b) in Court Numbers 19-

---

[4] Mexico is a "free trade area country." At the time Plaintiffs filed their
Complaint in January 2020, "free trade area country" included "Mexico for such
time as the [North American Free Trade Agreement ("NAFTA")] is in force with
respect to, and the United States applies the NAFTA to, Mexico." 19 U.S.C.
§ 1516a(f)(8), (10) (2006). The statute was amended following the replacement of
the NAFTA with the United States-Mexico-Canada Agreement ("USMCA") to
define "free trade area country" to include "Mexico for such time as the USMCA
is in force with respect to, and the United States applies the USMCA to, Mexico."
19 U.S.C. § 1516a(f)(9) (2020).

Consol. Court No. 19-00204                                              Page 13

00204 and 19-00210, challenging Commerce's withdrawal from the 2013

Suspension Agreement, and Court Number 20-00035 in its entirety.  Bioparques

III, 47 CIT at __, 633 F. Supp. 3d at 1348–49.  The Court denied the motions in

part related to all remaining claims in Court Numbers 19-00204 and 19-00210.  Id.

at __, 633 F. Supp. 3d at 1347–49.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and 28

U.S.C. § 1581(c), which grant the Court authority to review actions contesting the

final results in an investigation.  The Court will hold unlawful any determination

found to be unsupported by substantial evidence on the record or otherwise not in

accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.    Waiver

Defendant contends that Plaintiffs and Consolidated Plaintiffs waived counts

1(a), 6, 8, and 9 of their Amended Complaints by failing to raise them in their

motions for judgment on the agency record.  Def.'s Br. at 11–12.  Plaintiffs and

Consolidated Plaintiffs do not contest waiver in their response.  See Pls.' Reply;

Consol. Pls.' Reply.

"Generally, 'arguments not raised in the opening brief are waived.'"

Hyundai Steel Co. v. United States, 44 CIT __, __, 483 F. Supp. 3d 1273, 1277

(2020) (quoting SmithKline Beecha, Corp. v. Apotex Corp., 439 F.3d 1312, 1319

(Fed. Cir. 2006)).  Plaintiffs' count 1(a) challenges Commerce's authority to

resume or continue its investigation based on the withdrawal of the U.S. domestic

industry from the original petition that led to the investigation and 2013

Suspension Agreement.  Am. Compl. at 6.  Count 6 challenges Commerce's

substitution of the product-matching methodology used in the original

investigation with a new methodology.  Id. at 8.  Counts 8 and 9 challenge

Commerce's calculation of general and administrative expenses.  Id.  Plaintiffs and

Consolidated Plaintiffs did not address these issues in their motions for judgment

on the agency record.  Therefore, the Court deems these counts waived.

## II.    Timeliness of the Requests for Continuation

After an investigation has been suspended, an interested party may request a

continuation of the investigation "within 20 days after the date of publication of the

notice of suspension of an investigation."  19 U.S.C. § 1673c(g).  Commerce first

suspended its investigation of fresh tomatoes from Mexico on November 1, 1996.

Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,618.  Commerce subsequently

suspended the resumed investigation multiple times, most recently on September

24, 2019.  See 2019 Suspension Agreement, 84 Fed. Reg. 49,987; Fresh Tomatoes

from Mexico, 78 Fed. Reg. 14,967; Fresh Tomatoes from Mexico, 73 Fed. Reg.

4831; Fresh Tomatoes from Mexico, 67 Fed. Reg. 77,044.  Defendant-Intervenor

filed a request that Commerce continue the investigation on October 11, 2019.

Final Determination, 84 Fed. Reg. at 57,402; Def.-Interv.'s Request Continue

Suspended Less than Fair Value Investigation (Oct. 11, 2019), PR 492.  Red Sun

Farms filed a request for a continuation of the investigation on October 15, 2019.

Final Determination, 84 Fed. Reg. at 57,402; Red Sun Farms' Request Continue

Investigation (Oct. 15, 2019), PR 493.

Plaintiffs argue that Commerce was not authorized to continue its

antidumping investigation in October 2019 because the request for continuation

was not filed by an interested party within 20 days after Commerce published its

original notice of suspension on November 1, 1996.  Pls.' Br. at 14–16.  Plaintiffs

propose that section 1673c(g) should be read to require that any request for

continuation be filed within 20 days of the original suspension of an investigation.

Id. at 14.  Because Red Sun Farms did not file its continuation request until

October 2019, Plaintiffs assert that the request was filed 24 years too late.  In

support of this interpretation, Plaintiffs point to 19 U.S.C. § 1673c(j), which

provides that Commerce "shall consider all of the subject merchandise without

regard to the effect of any agreement" in a continued investigation.  Id. at 15; 19

U.S.C. § 1673c(j).  Plaintiffs argue that because section 1673c(j) precludes

consideration of events that occurred during the pendency of a suspension

agreement, interpreting section 1673c(g) to allow for continuation after a resumed

investigation "would result in an absurd outcome in which an interested party can take advantage of the termination and renegotiation of suspension agreements in an investigation to extend the time limit under subsection (g) indefinitely." Pls.' Br. at 15–16. Defendant argues that the plain language of 19 U.S.C. § 1673c(g) provides that Commerce may continue an investigation within 20 days of any notice of suspension being published and does not limit continuations to only the first notice of suspension. Def.'s Br. at 13, 14–17.

In interpreting a statute, courts must give effect to the plain meaning of the statutory language. See Star Athletica, LLC v. Varsity Brands, 580 U.S. 405, 414 (2017) (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992)). The inquiry begins with the text, "giving each word its "ordinary, contemporary, common meaning." Id. (quoting Walters v. Metro. Ed. Enters., Inc., 519 U.S. 202, 207 (1997)).

19 U.S.C. § 1673c(g) reads:

**Investigation to be continued upon request**

If the administering authority, within 20 days after the date of publication of the notice of suspension of an investigation, receives a request for the continuation of the investigation from—

    (1)    an exporter or exporters accounting for a significant proportion of exports to the United States of the subject merchandise, or

> (2)    an interested party described in subparagraph (C), (D), (E),
>          (F), or (G) of section 1677(9) of this title which is a party
>          to the investigation,

then the administering authority and the Commission shall continue the investigation.

19 U.S.C. § 1673c(g). The language of the statute does not expressly restrict an exporter or interested party to requesting a continuation of an investigation only following the *initial* notice of suspension. The statute uses the more general language of "the notice of suspension of *an* investigation." 19 U.S.C. § 1673c(g) (emphasis added). "In defining the plain meaning of a statute, courts must avoid 'add[ing] conditions' to the applicability of a statute that do not appear in the provision's text." Hymas v. United States, 810 F.3d 1312, 1324 (2016) (alteration in original) (quoting Norfolk Dredging Co. v. United States, 375 F.3d 1106, 1111 (Fed. Cir. 2004)).

Plaintiffs argue that interpreting subsection (g) to allow a party to request a continuation of a resumed investigation would conflict with subsection (j). Pls.' Br. at 15. 19 U.S.C. § 1673c(j) reads:

> In making a final determination under section 1673d of this title, or in
> conducting a review under section 1675 of this title, in a case in which
> the administering authority has terminated a suspension of investigation
> under subsection (i)(1), or continued an investigation under subsection
> (g), the Commission and the administering authority shall consider all
> of the subject merchandise without regard to the effect of any
> agreement under subsection (b) or (c).

19 U.S.C. § 1673c(j).  In discerning Congress' statutory intent, the Court does not interpret one provision in isolation but considers the statute as a whole.  See Star Athletica, 508 U.S. at 414 (citations omitted).  Plaintiffs suggest that under subsection (j), allowing investigations to continue following periods of suspension "would result in an absurd outcome in which an interested party can take advantage of the termination and renegotiation of suspension agreements in an investigation to extend the time limit under subsection (g) indefinitely."  Pls.' Br. at 15.

The Court concludes that there is no inconsistency between 19 U.S.C. § 1673c(j) and 19 U.S.C. § 1673c(g) as proposed by Plaintiffs.  Subsection (j) does not expressly impose any type of temporal limitation on Commerce's ability to resume its investigation only after the initial suspension, and the Court will not read any such limitation into the statute.  See 19 U.S.C. § 1673c(j).  If Commerce and parties are permitted to repeatedly suspend an investigation over several years, it is reasonable that the interested parties might request a continuation of the investigation following each new negotiated suspension.  The Court concludes that Commerce's determination that Defendant-Intervenor and Red Sun Farms filed timely requests for continuation in October 2019 following the suspension agreement entered into in September 2019 was in accordance with law.

### III.    Commerce's Resumed Investigation

Commerce's original investigation of fresh tomatoes from Mexico covered sales during the period of March 1, 1995 through February 29, 1996 and involved six mandatory respondents.  See Preliminary Determination, 61 Fed. Reg. at 56,608–10.  In May 2019, Commerce withdrew from the 2013 Suspension Agreement and continued the underlying antidumping duty investigation.  May 2019 Withdrawal Notice, 84 Fed. Reg. 20,858.  In the notice of withdrawal, Commerce described the new period of investigation as follows:

> The original period of investigation was March 1, 1995, through February 29, 1996.  Due to the unusual procedural posture of this proceeding, in which we are terminating a suspension agreement and continuing an investigation that covers a period of investigation that dates back more than 23 years, Commerce will be requesting information corresponding to the most recent four full quarters, *i.e.*, April 1, 2018 through March 31, 2019.

Id. at 20,860–61.  Commerce also explained respondent selection as:

> In light of the unusual procedural posture of this proceeding, Commerce finds it appropriate to reconsider respondent selection.  Commerce intends to evaluate U.S. Customs and Border Protection [] data for U.S. imports of fresh tomatoes from Mexico for the most recent four quarters under the appropriate Harmonized Tariff Schedule of the United States [] numbers listed in the "Scope of the Investigation" section above and select mandatory respondents in accordance with section 777A(c) of the Act.

Id. at 20,861.  Commerce indicated that it would issue its final determination

within 135 days after the withdrawal from and termination of the 2013 Suspension

Agreement became effective.  Id. at 20,860.

Plaintiffs argue that Commerce did not "resume" its prior investigation, but

instead initiated a completely new investigation based on new data and new

respondents.  Pls.' Br. at 16–18.  Defendant counters that Plaintiffs have not

provided statutory or regulatory support for this argument.  Def.'s Br. at 17–20.

When Commerce determines that a suspension agreement has been violated,

no longer eliminates the injurious effect of dumping, or is no longer in the public

interest, if the investigation was not completed, Commerce shall "resume the

investigation as if its affirmative preliminary determination were made on the date

of its determination."  19 U.S.C. § 1673c(i)(1)(B); 19 C.F.R. § 351.209(b)(2),

(c)(4).  The term "resume" is not defined by statute or regulation.  See 19 U.S.C.

§ 1677 (definitions; special rules); 19 C.F.R. § 351.102 (definitions).

Plaintiffs contend that the term "resume," as used in the statute and

regulations, requires Commerce to base its final determination on the data and

mandatory respondents from the suspended 1996 investigation.  Pls.' Br. at 17.

Defendant counters that Commerce did resume the 1996 investigation but, because

of the "unusual procedural posture of this proceeding" determined that more recent

economic information and new mandatory respondents should be selected.  Def.'s

Br. at 18; see also Final Determination.  Defendant contends that Commerce did

not start a "new" investigation, but merely "resumed" the prior investigation

consistent with Commerce's applicable regulations.  Def.'s Br. at 19.  Defendant

also explains that Commerce applied the 1996 regulations in its analysis.  Id.

When resolving an issue of statutory interpretation, the Court begins with

the language of the statute and "the assumption that the ordinary meaning of that

language accurately expresses the legislative purpose."  Park 'N Fly, Inc. v. Dollar

Park and Fly, Inc., 469 U.S. 189, 195 (1985); see also Obsidian Sols. Grp., LLC v.

United States, 54 F.4th 1371, 1374 (Fed. Cir. 2022) ("When tasked with

interpreting a statute, we start by exhausting all traditional tools of interpretation to

determine its meaning.  The starting point is the text itself.").

Section 1673c(i)(1) provides in relevant part:

> If the administering authority determines that an agreement accepted
> under subsection (b) or (c) is being, or has been, violated, or no longer
> meets the requirements of such subsection (other than the requirement,
> under subsection (c)(1), of elimination of injury) and subsection (d),
> then, on the date of publication of its determination, it shall . . . if the
> investigation was not completed, *resume the investigation as if its*
> *affirmative preliminary determination were made on the date of its*
> *determination under this paragraph.*

19 U.S.C. § 1673c(i)(1)(B) (emphasis added).  The Court finds this language to be

unambiguous.  Congress' use of the verb "resume" evidences an intention that

Commerce should *continue* the investigation already begun prior to the initial

suspension; in addition, the phrase "date of its determination" modifies

"affirmative preliminary determination."  Here, the Preliminary Determination was

made on November 1, 1996, and thus under 19 U.S.C. § 1673c(i)(1)(B),

Commerce should resume the investigation as if its affirmative preliminary

determination was made on the date of its determination—November 1, 1996.  To

read the statute as permitting drastic changes in the period of investigation or to

allow the selection of completely new mandatory respondents following the

suspension would render meaningless the preliminary determination prior to the

initial suspension agreement.

Moreover, the Court recognizes that adopting Defendant's proposed

interpretation risks creating prejudice for newly selected respondents.  In a normal

antidumping duty investigation, Commerce is required to issue its preliminary

determination within 140 days of the initiation of the investigation and the final

determination is to be issued within 75 days thereafter.  19 U.S.C. §§ 1673b(b)(1),

1673d(a)(1).  Commerce may extend these deadlines subject to some limitations.

Id. §§ 1673b(c), 1673d(a)(2).  Under this timeline, a newly initiated investigation

will normally last at least 215 days.  In a resumed investigation, because it is

presumed that an affirmative preliminary determination was issued prior to

suspension, the final determination is due to be issued within 75 days of the

resumption.  Id. §§ 1673b(c), 1673c(i)(1)(b).  This results in a compressed

timeline, and newly added mandatory respondents would be limited in their ability

to produce and challenge new data. Without having the benefit of the preliminary

determination phase that was completed in 1996, the newly selected mandatory

respondents in 2019 did not have the opportunity to provide initial information to

Commerce, review a preliminary determination, and submit administrative briefs

in response, and then challenge the final determination in court.

Defendant argues that Commerce never expressly purported to initiate a new

investigation and that the regulations in effect during the original 1996

investigation permitted Commerce to consider data from a later period of time.

Def.'s Br. at 18–19. The relevant regulation reads:

> [Commerce] normally will examine not less than 60 percent of the
> dollar value or volume of the merchandise sold during a period of at
> least 150 days prior to and 30 days after the first day of the month
> during which the petition was filed or the Secretary initiated the
> investigation under § 353.11, but [Commerce] may examine the
> merchandise for any additional or alternative period [Commerce]
> concludes is appropriate.

19 C.F.R. § 353.42 (1996). Defendant contends that the regulation provides

Commerce with a degree of discretion to look beyond the normal temporal borders

of its investigations; however, the regulation cannot be read to overwrite or conflict

with the clear intention of Congress expressed in Section 1673c(i)(1)(B). Congress

clearly expressed its intention in Section 1673c(i)(1)(B) for a resumed

investigation to be a *continuation* of the investigation conducted prior to

suspension, building from an existing preliminary determination.  The statutory language of section 1673c(i)(1)(B) is particularly relevant that, "if the investigation was not completed, [Commerce shall] *resume the investigation as if its affirmative preliminary determination were made on the date of its determination under this paragraph*."  19 U.S.C. § 1673c(i)(1)(B) (emphasis added).

Commerce cannot avoid this statutory requirement by arguing that the Court should accept that the investigation was "resumed" merely because Commerce never used the phrase "new investigation."  The preliminary determination examined six mandatory respondents for the period from 1995–1996.  The <u>Final Determination</u> examined three completely different mandatory respondents for the period from 2018–2019.  Thus, based on the facts in this case, the Court finds that Commerce's selection of new mandatory respondents and changing the period of investigation from 1995–1996 to 2018–2019 *de facto* initiated a new investigation.  Because Commerce started a new investigation rather than resumed the affirmative preliminary determination, Commerce's <u>Final Determination</u> is not in accordance with law.

The Court also notes that in at least two prior instances when Commerce resumed the investigation in this case in 2008 and 2013, Commerce's notices resuming the investigation indicated that the period of investigation would be the same March 1995 to February 1996 timeframe considered in the original 1996

investigation and affirmative preliminary determination.  Pls.' Br. at 11; Fresh
Tomatoes from Mexico, 73 Fed. Reg. 2887, 2888 (Dep't of Commerce Jan. 16,
2008) (notice of termination of suspension agreement, termination of five-year
sunset review, and resumption of antidumping investigation); Fresh Tomatoes
from Mexico, 78 Fed. Reg. 14,771, 14,967 (Dep't of Commerce Mar. 7, 2013)
(termination of suspension agreement, termination of five-year sunset review, and
resumption of antidumping investigation).  Clearly at least twice before in this
case, Commerce recognized that it needed to resume the investigation by using the
same period of investigation in the affirmative preliminary determination.

Even though it may be difficult in 2024 to investigate the fresh tomato
market in 1995–1996, and there may be concerns whether all of the relevant record
evidence is still available,[5] Commerce is required by statute to *resume* the prior
investigation that was suspended after issuing the affirmative preliminary
determination.  This means that Commerce's Final Determination must resume its
investigation flowing from the affirmative preliminary determination issued on
November 1, 1996, including focusing its analysis on the evidence submitted
regarding the original period of investigation of March 1, 1995 through February
29, 1996, and reviewing the original six mandatory respondents, thereby

---

[5] Apparently, Commerce is no longer able to locate a number of record documents
from the 1996 investigation.  Pls.' Br. at 11.

complying with the statutory requirement to "*resume the investigation as if its affirmative preliminary determination were made on the date of its determination under this paragraph*." 19 U.S.C. § 1673c(i)(1)(B) (emphasis added).

The Court concludes that Commerce's <u>Final Determination</u> is not in accordance with law and remands the matter to Commerce for further consideration in accordance with this Opinion.

### IV.    Remaining Issues

The Court is remanding the <u>Final Determination</u> in light of Commerce's erroneous examination of the 2018–2019 period of investigation with new mandatory respondents. Plaintiffs challenge numerous additional aspects of the <u>Final Determination</u>, including whether sales during the suspension period should have been disregarded, Commerce's use of the differential pricing analysis, Commerce's use of the investigation period of 2018–2019 rather than monthly averages, and inclusion of high-priced home market sales in the normal value calculation. Because Commerce will change its analysis when it resumes the investigation for the appropriate period of 1995–1996, much of the Court's analysis on these remaining issues regarding the 2019 investigation would be rendered inapplicable. Thus, the Court defers its analysis of most of the remaining issues until after Commerce's remand redetermination in the resumed investigation.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that counts 1(a), 6, 8, and 9 of Plaintiffs' and Consolidated Plaintiffs' Amended Complaints are dismissed as waived; it is further

**ORDERED** that the Court sustains Commerce's determination that the requests for continuation filed by Defendant-Intervenor and Red Sun Farms were timely; it is further

**ORDERED** that the <u>Final Determination</u> is remanded to Commerce to reconsider consistent with this Opinion the selection of new respondents and consideration of recent data in its resumed investigation; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1)    Commerce shall file its remand determination on or before August 16, 2024;

(2)    Commerce shall file the administrative record on or before August 30, 2024;

(3)    Comments in opposition to the remand determination shall be filed on or before September 27, 2024;

(4)    Comments in support of the remand determination shall be filed on or

        before October 25, 2024; and

(5)    The joint appendix shall be filed on or before November 22, 2024.

                                                    /s/ Jennifer Choe-Groves
                                              Jennifer Choe-Groves, Judge


Dated:    April 17, 2024
             New York, New York