UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., AND KALIROY FRESH LLC, <br><br> *Plaintiffs*, <br><br> CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, AND SISTEMA PRODUCTO TOMATE, <br><br> *Consolidated-Plaintiffs*, <br><br> and <br><br> NS BRANDS, LTD., NATURESWEET INVERNADEROS S. DE R.L. DE C.V AND NATURESWEET COMERCIALIZADORA, S. DE R.L. DE C.V., <br><br> *Plaintiff-Intervenors*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*. <br><br> and <br><br> THE FLORIDA TOMATO EXCHANGE, <br><br> *Defendant-Intervenor*. | Court No. 19-00204 |

# **ORDER**

Upon consideration of the comments of NS Brands, Ltd. ("NSB") and Naturesweet Invernaderos S. de R.L. de C.V. ("NSI")/ NatureSweet Comercializadora, S. de R.L. de C.V.

("NSC"), (collectively "NatureSweet") filed on the remand redetermination in the above-captioned case, and upon consideration of all other papers and proceedings herein, it is hereby:

**ORDERED** that the Department of Commerce must calculate an individual dumping margin for NatureSweet.

**SO ORDERED**.

Date: _____, 2025         _____
     New York, New York                                              Jennifer Choe-Groves, Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., AND KALIROY FRESH LLC,<br><br>*Plaintiffs*,<br><br>CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, AND SISTEMA PRODUCTO TOMATE,<br><br>*Consolidated-Plaintiffs*,<br><br>and<br><br>NS BRANDS, LTD., NATURESWEET INVERNADEROS S. DE R.L. DE C.V AND NATURESWEET COMERCIALIZADORA, S. DE R.L. DE C.V.,<br><br>*Plaintiff-Intervenors*,<br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*.<br><br>and<br><br>THE FLORIDA TOMATO EXCHANGE,<br><br>*Defendant-Intervenor*. | Court No. 19-00204 |

**NATURESWEET COMMENTS IN OPPOSITION TO REMAND REDETERMINATION**

Jessica R. DiPietro
Matthew M. Nolan
Leah N. Scarpelli
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC  20006

December 3, 2024

**Table of Contents**

I. SUMMARY OF THE ARGUMENT ................................................................................... 2
II. FACTUAL BACKGROUND ............................................................................................ 3
III. ARGUMENT ..................................................................................................................... 4
IV. CONCLUSION .................................................................................................................. 7

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*ABB Inc. v. United States*,
   190 F. Supp. 3d 1159 (Ct. Int'l Trade 2016), *aff'd* 920 F.3d 811 (Fed. Cir. 2019) ..................................................................................................................4

*Bioparques de Occidente, S.A. de C.V. v. United States*,
   698 F. Supp. 3d 1265 (Ct. Int'l Trade 2024) ......................................................2

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
   529 F.3d 1352 (Fed. Cir. 2008)...........................................................................6

**Federal Statutes**

19 U.S.C. § 1675(a)(1)................................................................................................5

19 U.S.C. § 1675(a)(2)(B)(i).......................................................................................5

19 U.S.C. § 1675(a)(2)(B)(i)(I)...................................................................................5

19 U.S.C. § 1675(a)(2)(B)(i)(II).................................................................................5

19 U.S.C. § 1675(b)(1) ...............................................................................................6

**Regulations**

*Fresh Tomatoes From Mexico: Suspension of Antidumping Duty Investigation*, 84 Fed. Reg. 49987, 49989-90 (Dep't Commerce Sept. 24, 2019) (*2019 Suspension Agreement*)..................................................................................4

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| BIOPARQUES DE OCCIDENTE, S.A. DE C.V., AGRICOLA LA PRIMAVERA, S.A. DE C.V., AND KALIROY FRESH LLC, *Plaintiffs*, CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, AND SISTEMA PRODUCTO TOMATE, *Consolidated-Plaintiffs*, and NS BRANDS, LTD., NATURESWEET INVERNADEROS S. DE R.L. DE C.V AND NATURESWEET COMERCIALIZADORA, S. DE R.L. DE C.V., *Plaintiff-Intervenors*, v. THE UNITED STATES, *Defendant*, and THE FLORIDA TOMATO EXCHANGE, *Defendant-Intervenor.* | Court No. 19-00204 |

## NATURESWEET COMMENTS IN OPPOSITION TO REMAND REDETERMINATION

Pursuant to the U.S. Court of International Trade's opinion and order dated April 17, 2024, ECF 115, and First Amended Scheduling Order issued on July 31, 2024, ECF 118, Plaintiffs-Intervenors NS Brands, Ltd., Naturesweet Invernaderos S. de R.L. de C.V, and

1

NatureSweet Comercializadora, S. de R.L. de C.V. (collectively, "NatureSweet" or "Plaintiffs-Intervenor"), provide the following comments in response to the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand filed on October 22, 2024, ECF 121, REM-C.R. 66; REM-P.R. 68 ("Remand Redetermination"). The Remand Redetermination was issued pursuant to the April 17, 2024 remand order of the U.S. Court of International Trade in *Bioparques de Occidente, S.A. de C.V. v. United States*, Court No. 19-00204, slip op. 24-45 (Ct. Int'l Trade Apr. 17, 2024), published at 698 F. Supp. 3d 1265 (2024) ("*Remand Order*"). These comments are timely filed pursuant to the Court's Remand Order and Amended Scheduling Order.

I.    **SUMMARY OF THE ARGUMENT**

In *Bioparques de Occidente, S.A. de C.V. et al v. United States*, the Court dismissed counts 1(a), 5, 8, and 9 of Plaintiffs' amended complaint, ECF 64, and remanded Commerce's final determination to reconsider "respondents and consideration of recent data in its resumed investigation." 698 F. Supp. 3d at 1277. NatureSweet does not object to Commerce's Remand Redetermination as it responds to the Court's holding that the statute requires Commerce to "resume the investigation as if its affirmative preliminary determination was made on the date of its determination – November 1, 1996." *Id.* at 1275. NatureSweet does not disagree with this holding. NatureSweet recognizes that to determine otherwise, "would render meaningless the preliminary determination prior to the initial suspension agreement." *Id.* Importantly, the Court also "recognize{d}" the potential "prejudice for newly selected respondents." *Id.*

However, there is also prejudice to companies now in existence which did not exist during the preliminary phase of Commerce's investigation in 1996. Although Commerce complied with the Court's Order to continue its investigation using the information provided and

2

respondents selected in 1996, Commerce summarily rejected any option for companies which did not exist during the original investigation. Commerce is required to determine fair and accurate dumping margins, and must provide parties an opportunity to obtain an individual, calculated dumping margin, whether or not part of this remand proceeding.

## II.    FACTUAL BACKGROUND

NatureSweet is an industry leader in the development of premium specialty tomato products, headquartered in San Antonio, Texas, operating tomato production facilities in both the U.S. and Mexico. The overwhelming majority of its production and sales is comprised of smaller varieties of specialty tomatoes such a cherry, grape, and other innovative premium small size products. The specialty tomato products grown and sold in the U.S. by NatureSweet and other specialty producers bear no resemblance to the field grown commodity products that represent the vast bulk of U.S. production and Mexican imports. *See* Remand Redetermination at 28-29, ECF 121, REM-C.R. 66; REM-P.R. 68.

On remand, Commerce requested "updated information on the operating status and ownership of the original mandatory respondents" from all interested parties. *Id.* at 11. NatureSweet provided such information related to the general tomatoes market and with respect to "two of the seven original mandatory respondents." *Id.* NatureSweet requested individual examination in an effort to determine its dumping margin, explaining that circumstances now exist to do so. In its final Remand Redetermination, Commerce relied on information provided by NatureSweet to describe the current tomatoes market and to determine whether certain mandatory respondents from the 1996 were still in existence. Commerce also rejected NatureSweet's requests for individual examination.

3

NatureSweet moved to intervene because it "provid{ed} information specific to its operations" which was "referenced in the remand determination" and to "adequately represent its interests," including those explained in the comments filed with Commerce. *See* NatureSweet's Motion to Intervene at 6 (Oct. 25, 2024), ECF 122. The Court granted NatureSweet's motion on November 25, 2024. *See* ECF 129.

**III.    ARGUMENT**

Commerce must calculate fair and accurate margins. *See, e.g., ABB Inc. v. United States*, 190 F. Supp. 3d 1159, 1178 (Ct. Int'l Trade 2016), *aff'd* 920 F.3d 811 (Fed. Cir. 2019) ("The Court is mindful that while Commerce has a responsibility to ensure the integrity of its own proceedings and to ensure that the data it uses in its margin calculations is accurate and supported by the record, this obligation does not extend to ensuring the accuracy of data or information that a respondent may report to another agency."). To do so for companies like NatureSweet, Commerce must consider that certain tomatoes existing today do not match the products existing in 1995-1996. NatureSweet's Response to Request for Information at 7-14 (July 18, 2024), REM-C.R. 2, REM-P.R. 22 ("NatureSweet RFI Resp."). New, specialty, snacking tomatoes are covered by the *2019 Suspension Agreement*, exported to the United States, and, thus, subject to the determined all-others' rate, even though they are produced differently than the tomatoes covered by the 1995-1996 investigation. *See Fresh Tomatoes From Mexico: Suspension of Antidumping Duty Investigation*, 84 Fed. Reg. 49987, 49989-90 (Dep't Commerce Sept. 24, 2019) ("*2019 Suspension Agreement*") (providing product coverage and definitions); *see also* Remand Redetermination at 27-28, ECF 121, REM-C.R. 66; REM-P.R. 68 (discussing the different tomato types in existence in 1995-1996 versus 2019-present). In the event that the statute does not allow for investigation of companies like NatureSweet as part of the remand

4

proceeding, Commerce has an obligation to "establish an individual weighted average dumping margin" for companies with bona fide sales, even those subject to suspension agreements. *See* 19 U.S.C. §§ 1675(a)(2)(B)(i); 1675(a)(1) (providing when Commerce should conduct such a review, including after "a notice of the suspension of an investigation."). NatureSweet "did not export the merchandise that was the subject" to the initial or continued investigation of fresh tomatoes from Mexico "during the period of investigation." 19 U.S.C. § 1675(a)(2)(B)(i)(I). Also, NatureSweet is not affiliated with any company that did participate in the investigation. 19 U.S.C. § 1675(a)(2)(B)(i)(II); *see also* Remand Redetermination at 11 (describing how NatureSweet is connected to an original respondent but is not a successor). Commerce also has the authority and discretion to conduct such a review. *See* 19 U.S.C. §§ 1675(a)(2)(B)(i); 1675(a)(1).

Commerce explained that "significant changes to the tomatoes industry could adversely impact whether Commerce's model matching methodology accurately reflects the market for fresh tomatoes." Remand Redetermination at 28, ECF 121, REM-C.R. 66; REM-P.R. 68. Commerce determined that

> the types of tomatoes reported in the 1995-96 sales data and matched in the margin calculations for the *Preliminary Determination* in 1996 differ from the commercial and market conditions at the time Commerce continued the investigation in 2019, *i.e.*, {the industry} saw significant growth in specialty types of tomatoes relative to round, plum, and roma.

*Id.* at 31. Commerce also determined that the product matching of tomatoes by tomato type is not outdated. *Id.* NatureSweet respectfully disagrees that tomatoes existing in 1995-1996 are representative of all current products in the market.

There is ample evidence demonstrating that the tomatoes did not exist, NatureSweet did not exist, and that the current market is different. *See id.* ("However, we found that the types of tomatoes reported in the 1995-1996 sales data and matched the margin calculations for the

5

*Preliminary Determination* in 1996 differ from the commercial and market conditions at the time Commerce continued the investigation in 2019.")  Specifically, since 1996, the market has seen "significant growth in specialty types of tomatoes relative to round, plum, and roma," *i.e.*, the type of tomato primarily exported and imported by NatureSweet. *Id*. at 31-32. There have been "significant changes in growing techniques and market demands since the 1995-1996 period." *Id.* at 29.  The changes are particularly true in Mexico, rather than in the United States. "Mexican production shifted heavily toward protected agriculture styles" while "U.S. production stayed focused on open field tomato production." *Id.* Commerce relied on much of this information, as provided by NatureSweet, in its Remand Redetermination.  *See id.* at 27-29.

Commerce reasoned that it did "not currently see a way to address" the "substantial changes to the tomatoes industry from the original period of investigation and that the sales and cost data obtained for the original period may not be representative of today's tomatoes industry and market." *Id.* at 29.  Commerce need not address the changes to the tomatoes industry in the continued investigation, per the Court's Order.  However, Commerce does have mechanisms to address these changes. The statute provides that "*{w}henever*" Commerce "receives information concerning, or a request from an interested party for a review of . . . a suspension agreement accepted under section 1671c or 1673c . . . which shows changed circumstances *sufficient to warrant a review* of such determination or agreement" Commerce "*shall* conduct a review of the determination or agreement after publishing notice of the review in the Federal Register."  19 U.S.C. § 1675(b)(1) (emphasis added).  This is the only threshold question Commerce asks prior to initiating a changed circumstances review. *See, e.g. Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) ("As its name suggests, § 1675(b)(1) is intended to facilitate the review of certain determinations when the circumstances have changed sufficiently

6

from the time that the determination was originally made such that it may no longer be appropriate.").

In sum, because of the identified product mismatch, NatureSweet, a company producing and exporting almost exclusively specialty, snacking tomatoes, is subject to an all-others' rate which is not representative of its experience as a producer/exporter of fresh tomatoes from Mexico. This is especially true because NatureSweet did not even exist in 1995. *See* Remand Redetermination at 32, ECF 121, REM-C.R. 66; REM-P.R. 68. Although Commerce complied with the Court's Order to continue its investigation, Commerce must also fulfill its obligation to calculate fair and accurate dumping margins, particularly for companies who began shipping after the initial investigation.

## IV.   CONCLUSION

NatureSweet respectfully requests that the Court order Commerce to fulfill its statutory obligation to calculate accurate margins for companies which were not in existence during the initial investigation.

Respectfully submitted,

**/s/ Jessica R. DiPietro**
Jessica R. DiPietro
Matthew M. Nolan
Leah N. Scarpelli

ArentFox Schiff LLP
1717 K Street, NW
Washington, DC  20006
Tel: (202) 715-8403
Email: Jessica.DiPietro@afslaw.com

December 3, 2024

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Plaintiff-Intervenors' Comments on the Remand Redetermination filed on December 3, 2025, complies with the word limitation requirement. The word count for Plaintiff's Comments, as computed by ArentFox Schiff LLP's word processing system is 1,669.

 /s/ Jessica R. DiPietro
      Jessica R. DiPietro

AFSDOCS:300876758.4