Slip Op. 25-43

## UNITED STATES COURT OF INTERNATIONAL TRADE

BIOPARQUES DE OCCIDENTE,
S.A. DE C.V., AGRICOLA LA
PRIMAVERA, S.A. DE C.V., AND
KALIROY FRESH LLC,

    Plaintiffs,

CONFEDERACION DE
ASOCIACIONES AGRICOLAS
DEL ESTADO DE SINALOA,
A.C., CONSEJO AGRICOLA DE
BAJA CALIFORNIA, A.C.,
ASOCIACION MEXICANA DE
HORTICULTURA PROTEGIDA,
A.C., ASOCIACION DE
PRODUCTORES DE
HORTALIZAS DEL YAQUI Y
MAYO, AND SISTEMA
PRODUCTO TOMATE,

    Consolidated Plaintiffs,

NS BRANDS, LTD.,
NATURESWEET
INVERNADEROS S. DE R.L. DE
C.V., AND NATURESWEET
COMERCIALIZADORA, S. DE
R.L. DE C.V.,

    Plaintiff-Intervenors,

v.

Before:  Jennifer Choe-Groves, Judge

Consol. Court No. 19-00204

> UNITED STATES,
>
>          Defendant,
>
> and
>
> THE FLORIDA TOMATO
> EXCHANGE,
>
>          Defendant-Intervenor.

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's resumed antidumping duty investigation of fresh tomatoes from Mexico.]

Dated:  April 17, 2025

Jeffrey M. Winton, Amrietha Nellan, Michael J. Chapman, and Vi N. Mai, Winton & Chapman PLLC, of Washington, D.C., for Plaintiffs Bioparques de Occidente, S.A. de C.V., Agricola La Primavera, S.A. de C.V., and Kaliroy Fresh LLC.

Yujin K. McNamara, Bernd G. Janzen, Devin S. Sikes, and Paul S. Bettencourt, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, D.C., for Consolidated Plaintiffs Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C., Consejo Agricola de Baja California, A.C., Asociacion Mexicana de Horticultura Protegida, A.C., Asociacion de Productores de Hortalizas del Yaqui y Mayo, and Sistema Producto Tomate.

Jessica R. DiPietro, Leah N. Scarpelli, and Matthew M. Nolan, ArentFox Schiff LLP, of Washington, D.C., for Plaintiff-Intervenors NS Brands, Ltd., Naturesweet Invernaderos S. de R.L. de C.V., and NatureSweet Comercializadora, S. de R.L. de C.V.

Douglas G. Edelschick, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With him on the brief were Brian M. Boynton, Principal Deputy Assistant

Consol. Court No. 19-00204                                              Page 3

Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Franklin E. White, Jr.</u>, Assistant Director.  Of counsel was <u>Emma T. Hunter</u>, Assistant Chief Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

<u>Robert C. Cassidy, Jr.</u>, <u>Charles S. Levy</u>, <u>Chase J. Dunn</u>, <u>James R. Cannon, Jr.</u>, <u>Mary Jane Alves</u>, <u>Jonathan M. Zielinski</u>, and <u>Nicole Brunda</u>, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor The Florida Tomato Exchange.

Choe-Groves, Judge:  This case began nearly three decades ago when the U.S. Department of Commerce ("Commerce") initiated an investigation into whether fresh tomatoes from Mexico were being sold in the United States at less than fair value.  Commerce issued a preliminary determination in 1996 that Mexican tomatoes were being, or were likely to be, sold in the U.S. at less than fair value.  Before a final determination was issued, Commerce and the Mexican tomato growers entered into an agreement to suspend the investigation.  A series of subsequent agreements (in 1996, 2002, 2008, and 2013) were negotiated over the following years.  In May of 2019, Commerce withdrew from the 2013 suspension agreement.  Commerce and the Mexican tomato growers entered into a new agreement to suspend the investigation in September 2019.  In October 2019, the U.S. domestic tomato growers requested that Commerce resume the suspended investigation.

Commerce resumed the investigation in October 2019, selected new mandatory respondents, and collected new economic data from 2018 and 2019. Commerce issued a <u>Final Determination</u> on October 25, 2019. <u>Fresh Tomatoes from Mexico</u> ("<u>Final Determination</u>"), 84 Fed. Reg. 57,401 (Dep't of Commerce Oct. 25, 2019) (final determination of sales at less than fair value), and accompanying Final Issues and Decisions Memorandum ("Final IDM"), PR 494.[1]

This Court remanded the <u>Final Determination</u> to Commerce, holding that Commerce erroneously relied on an examination of the 2018–2019 period of investigation, rather than the original period of investigation, March 1, 1995 through February 29, 1996. <u>Bioparques de Occidente, S.A. de C.V. v. United States</u> ("<u>Bioparques IV</u>"), 48 CIT __, __, 698 F. Supp. 3d 1265, 1273–76 (2024). Now before the Court is Commerce's <u>Redetermination Pursuant to Court Remand Order</u>. <u>Redetermination Pursuant Ct. Remand Order</u> ("<u>Remand Redetermination</u>"), ECF Nos. 120, 121.

Plaintiff-Intervenors NS Brands, Ltd., Naturesweet Invernaderos S. de R.L. de C.V., and NatureSweet Comercializadora, S. de R.L. de C.V. (collectively, "Plaintiff-Intervenors") filed Plaintiff-Intervenors' Comments in Opposition to Remand Redetermination. Pl.-Intervs.' Cmts. Opp'n Remand Redetermination

---

[1] Citations to the administrative record reflect the public record ("PR") and public remand record ("PRR") document numbers filed in this case, ECF Nos. 100, 138.

("Pl.-Intervs.' Br."), ECF No. 130.  Defendant-Intervenor The Florida Tomato

Exchange filed Defendant-Intervenor's Comments Supporting Commerce's

Remand Determination.  Def.-Interv.'s Cmts. Supp. Commerce Remand

Determination ("Def.-Interv.'s Br."), ECF Nos. 131, 132.  Defendant United States

filed Defendant's Response to NatureSweet's Comments on Remand

Redetermination.  Def.'s Resp. Pl.-Intervs.' Cmts. Remand Redetermination

("Def.'s Br."), ECF No. 133.  Consolidated Plaintiffs Confederacion de

Asociaciones Agricolas del Estado de Sinaloa, A.C., Consejo Agricola de Baja

California, A.C., Asociacion Mexicana de Horticultura Protegida, A.C.,

Asociacion de Productores de Hortalizas del Yaqui y Mayo, and Sistema Producto

Tomate (collectively, "Consolidated Plaintiffs") filed Consolidated Plaintiffs'

Comments in Support of the Final Results of Redetermination Pursuant to Court

Remand.  Consol. Pls.' Cmts. Supp. Final Results Redetermination Pursuant Ct.

Remand ("Consol. Pls.' Br."), ECF No. 134.  Plaintiffs Bioparques de Occidente,

S.A. de C.V., Agricola La Primavera, S.A. de C.V., and Kaliroy Fresh LLC

(collectively, "Plaintiffs") filed Comments of Plaintiffs in Support of Remand

Redetermination.  Cmts. Pls. Supp. Remand Redetermination ("Pls.' Br."), ECF

No. 136.  For the reasons discussed below, the Court sustains Commerce's

Remand Redetermination.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history set forth in its prior Orders and Opinions and recounts the facts relevant to the Court's review of the Remand Redetermination.  See Bioparques IV, 48 CIT at __, 698 F. Supp. 3d at 1268–71; Bioparques de Occidente, S.A. de C.V. v. United States ("Bioparques III"), 47 CIT __, __, 633 F. Supp. 3d 1340, 1343–45 (2023); Bioparques de Occidente, S.A. de C.V. v. United States ("Bioparques I"), 44 CIT __, __, 470 F. Supp. 3d 1366, 1368–70 (2020).

## I.    Antidumping Duty Investigation and Suspension Agreements

In April 1996, Commerce initiated an antidumping duty investigation to determine whether imports of fresh tomatoes from Mexico were being, or were likely to be, sold in the United States at less than fair value.  Fresh Tomatoes from Mexico, 61 Fed. Reg. 18,377 (Dep't of Commerce Apr. 25, 1996) (initiation of antidumping duty investigation).  After an affirmative preliminary injury determination from the U.S. International Trade Commission ("ITC"), Commerce made a preliminary determination that imports of fresh tomatoes from Mexico were being sold in the United States at less than fair value.  Fresh Tomatoes from Mexico ("Preliminary Determination"), 61 Fed. Reg. 56,608 (Dep't of Commerce Nov. 1, 1996) (notice of preliminary determination of sales at less than fair value and postponement of final determination).  Concurrent with Commerce's

Preliminary Determination, Commerce published a notice in the Federal Register

announcing an agreement under 19 U.S.C. § 1673c(c) with certain producers and

exporters who accounted for substantially all of the imports of fresh tomatoes from

Mexico into the United States to suspend the antidumping duty investigation on

fresh tomatoes from Mexico. Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,618

(Dep't of Commerce Nov. 1, 1996) (suspension of antidumping investigation).

Between 1996 and 2013, Commerce and the producers and exporters of tomatoes

from Mexico entered into three further suspension agreements. See Fresh

Tomatoes from Mexico, 67 Fed. Reg. 77,044 (Dep't of Commerce Dec. 16, 2002)

(suspension of antidumping investigation); Fresh Tomatoes from Mexico, 73 Fed.

Reg. 4831 (Dep't of Commerce Jan. 28, 2008) (suspension of antidumping

investigation); Fresh Tomatoes from Mexico ("2013 Suspension Agreement"), 78

Fed. Reg. 14,967 (Dep't of Commerce Mar. 8, 2013) (suspension of antidumping

investigation).

Commerce gave notice to the signatory growers on February 6, 2019 of

Commerce's intent to withdraw from the 2013 Suspension Agreement. Fresh

Tomatoes from Mexico, 84 Fed. Reg. 7872, 7874 (Dep't of Commerce Mar. 5,

2019) (intent to terminate suspension agreement, rescind the sunset and

administrative reviews, and resume the antidumping duty investigation); Fresh

Tomatoes from Mexico ("May 2019 Withdrawal Notice"), 84 Fed. Reg. 20,858,

20,860 (Dep't of Commerce May 13, 2019) (termination of suspension agreement, rescission of administrative review, and continuation of the antidumping duty investigation).  Commerce withdrew from the 2013 Suspension Agreement on May 7, 2019 and resumed the underlying antidumping investigation.  May 2019 Withdrawal Notice, 84 Fed. Reg. at 20,860.

Commerce published a notice on September 24, 2019, stating that a new suspension agreement had been reached between Commerce and the signatory parties and that the antidumping duty investigation had been suspended.  Fresh Tomatoes from Mexico ("2019 Suspension Agreement"), 84 Fed. Reg. 49,987, 49,989 (Dep't of Commerce Sept. 24, 2019) (suspension of antidumping duty investigation).  The ITC subsequently announced the suspension of its antidumping investigation.  Fresh Tomatoes from Mexico, 84 Fed. Reg. 54,639 (ITC Oct. 10, 2019) (suspension of antidumping investigation).

In October 2019, U.S. domestic tomato industry representatives requested that Commerce continue the investigation.  In response to these requests, Commerce "continued and completed this investigation in accordance with section 734(g) of the Tariff Act of 1930, as amended."  Final Determination, 84 Fed. Reg. at 57,402.  Commerce published its affirmative Final Determination on October 25, 2019, determining that fresh tomatoes from Mexico were being, or were likely to be, sold in the United States at less than fair value.  Id.  The ITC issued an

affirmative injury determination on December 12, 2019. <u>Fresh Tomatoes from Mexico</u>, 84 Fed. Reg. 67,958 (ITC Dec. 12, 2019).

## II. Litigation

In 2019, Plaintiffs filed three separate actions challenging Commerce's continued investigation and <u>Final Determination</u>. Summons, ECF No. 1; Compl., ECF No. 9; Summons, Court No. 19-00210, ECF No. 1; Compl., Court No. 19-00210, ECF No. 9; Summons, Court No. 20-00035, ECF No. 1; Compl., Court No. 20-00035, ECF No. 4. The Court dismissed the cases under USCIT Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim on which relief could be granted. <u>Bioparques I</u>, 44 CIT at __, 470 F. Supp. 3d at 1373.

The U.S. Court of Appeals for the Federal Circuit ("CAFC") affirmed the Court's dismissal of Plaintiffs' claims challenging the termination of the <u>2013 Suspension Agreement</u> and the negotiation of the <u>2019 Suspension Agreement</u>. <u>Bioparques de Occidente, S.A. v. United States</u> ("<u>Bioparques II</u>"), 31 F.4th 1336, 1343 (Fed. Cir. 2022). The CAFC remanded the remainder of the claims, holding that because the <u>Final Determination</u> constituted "an affirmative final determination in a continued investigation that involves exports from [a free trade

agreement] country"[2] and is reviewable under 19 U.S.C. § 1516a(g)(3)(A)(i), the

Court has jurisdiction to consider Plaintiffs' challenges to the <u>Final Determination</u>

under 28 U.S.C. § 1581(c). <u>Id.</u> at 1346–48. On remand, the Court later

consolidated Plaintiffs' three cases with the related case <u>Confederacion de</u>

<u>Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States</u>, Court No.

19-00203. Consol. Order (Sept. 1, 2022), ECF No. 63.

Plaintiffs filed Amended Complaints on September 1, 2022 in Court

Numbers 19-00204 and 19-00210. Am. Compl., ECF No. 64; Am. Compl., Court

No. 19-00210, ECF No. 69. The Amended Complaints raise ten causes of action.

Am. Compl. at 6–8; Am. Compl. at 6–8, Court No. 19-00210; Compl. at 6–7,

Court No. 20-00035. Specifically, Plaintiffs challenge as unlawful Commerce's

withdrawal from the <u>2013 Suspension Agreement</u> (claim 1(b)); Commerce's

resumption of the suspended antidumping duty investigation (claims 1(a) and

1(c)); Commerce's ending of the investigation into the respondents that were the

---

[2] Mexico is a "free trade area country." At the time Plaintiffs filed their
Complaint in January 2020, "free trade area country" included "Mexico for such
time as the [North American Free Trade Agreement ("NAFTA")] is in force with
respect to, and the United States applies the NAFTA to, Mexico." 19 U.S.C.
§ 1516a(f)(8), (10) (2006). The statute was amended following the replacement of
the NAFTA with the United States-Mexico-Canada Agreement ("USMCA") to
define "free trade area country" to include "Mexico for such time as the USMCA
is in force with respect to, and the United States applies the USMCA to, Mexico."
19 U.S.C. § 1516a(f)(9) (2020).

subject of Commerce's 1996 <u>Preliminary Determination</u> and selection of new

respondents for the continued investigation (claim 2); the procedures that

Commerce followed in the resumed investigation (claim 3); and the correctness of

certain aspects of the <u>Final Determination</u> (claims 4–10).  Am. Compl. at 6–8; Am.

Compl. at 6–8, Court No. 19-00210; Compl. at 6–7, Court No. 20-00035.  In all,

Plaintiffs ask the Court to declare unlawful and vacate Commerce's withdrawal

from the <u>2013 Suspension Agreement</u> and the subsequent <u>Final Determination</u>.

Am. Compl. at 8; Am. Compl. at 8, Court No. 19-00210; Compl. at 7, Court No.

20-00035.

On motions to dismiss filed by Defendant and Defendant-Intervenor, this

Court dismissed Plaintiffs' and Plaintiff-Intervenors' claims 1(b) in Court Numbers

19-00204 and 19-00210, challenging Commerce's withdrawal from the <u>2013</u>

<u>Suspension Agreement</u>, and Court Number 20-00035 in its entirety.  <u>Bioparques</u>

<u>III</u>, 47 CIT at __, 633 F. Supp. 3d at 1348–49.  Plaintiffs and Consolidated

Plaintiffs filed motions for judgment on the agency record, challenging the <u>Final</u>

<u>Determination</u>.  Pls.' R. 56.2 Mot. J. Agency R., ECF No. 81; Mot. Pls. J. Agency

R., ECF Nos. 82, 83; Consol. Pls.' Am. R. 56.2 Mot. J. Agency R., ECF No. 92.

The Court dismissed claims 1(a), 6, 8, and 9 of the Amended Complaints, deeming

those claims to have been waived.  <u>Bioparques IV</u>, 48 CIT at __, 698 F. Supp. 3d

at 1271, 1277.  The Court further held that Commerce was required to "resume its

investigation flowing from the affirmative preliminary determination issued on

November 1, 1996, including focusing its analysis on the evidence submitted

regarding the original period of investigation of March 1, 1995 through February

29, 1996, and reviewing the original six mandatory respondents," and erred in

examining three completely different mandatory respondents for the period from

2018–2019. Id. at __, 698 F. Supp. 3d at 1276–77. The Final Determination was

remanded to Commerce to correct these errors. Id. at __, 698 F. Supp. 3d at 1277.

### III. Remand

On remand, Commerce invited parties to submit new factual information and

comments regarding the operating status and current ownership of the seven

mandatory respondents from the original investigation, changes to the Mexican

tomato industry since the 1995–1996 period of investigation, and changes to the

United States tomato industry since the 1995–1996 period of investigation.

Remand Redetermination at 9; Commerce's Letter All Interested Parties Re: Fresh

Tomatoes from Mexico: Request Info., PRR 3. Commerce received comments

from Plaintiff-Intervenors; Consolidated Plaintiffs; Defendant-Intervenor; the

Fresh Produce Association of the Americas; and Mastronardi Produce – USA, Inc.,

Mastronardi International, Ltd., and Mastronardi Produce, Ltd. Remand

Redetermination at 9; Pl.-Intervs.' Resp. Request Info., PRR 22. Commerce issued

a draft remand redetermination on September 27, 2024. Draft Results

Redetermination Pursuant Ct. Remand ("Draft Remand Redetermination"), PRR

39. Plaintiff-Intervenors filed comments before Commerce on the Draft Remand

Redetermination, in which they argued that they were entitled to a changed

circumstances or new shipper review. Pl.-Intervs.' Cmts. Draft Remand

Redetermination, PRR 66.

 In its Remand Redetermination, Commerce evaluated the 1995–1996 data

from the original seven respondents individually examined during the 1996 and

2002 investigation and calculated dumping margins using the 1995–1996 data.

Remand Redetermination at 2–31, 35–36. Commerce determined that it was not

appropriate to initiate a new shipper or changed circumstances review for Plaintiff-

Intervenor. Id. at 32–33. Commerce issued its Remand Redetermination under

protest. Id. at 2.

 Shortly after the Remand Redetermination was issued, Plaintiff-Intervenors

filed their Partial Consent Motion to Intervene Out of Time, in which Plaintiff-

Intervenors sought to intervene as a matter of right pursuant to USCIT Rule 24(a).

Pl.-Intervs.' Part. Consent Mot. Interv. Out Time, ECF No. 122. The Court

granted Plaintiff-Intervenor's motion and permitted intervention. Bioparques de

Occidente, S.A. de C.V. v. United States ("Bioparques V"), 48 CIT __, 745 F.

Supp. 3d 1322 (2024).

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C.
§ 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to
review actions contesting the final determination of an antidumping duty
investigation.  The Court will hold unlawful any determination found to be
unsupported by substantial record evidence or otherwise not in accordance with
law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court reviews determinations made on
remand for compliance with the Court's remand order.  Ad Hoc Shrimp Trade
Action Comm. v. United States, 38 CIT 727, 730, 992 F. Supp. 2d 1285, 1290
(2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I.     Remand Redetermination

The Court remanded the Final Determination for Commerce to "resume its
investigation flowing from the affirmative preliminary determination issued on
November 1, 1996, including focusing its analysis on the evidence submitted
regarding the original period of investigation of March 1, 1995 through February
29, 1996, and reviewing the original six mandatory respondents."  Bioparques IV,
48 CIT at __, 698 F. Supp. 3d at 1276.

On remand, Commerce determined that seven respondents were individually
examined in the 1996 and 2002 investigation: San Vicente Camalu ("Camalu");

Ernesto Fernando Echavarria Salazar Grupo Solidaio ("Echavarria"); Arturu
Lomeli Villalobas S.A. de C.V. ("Lomeli"); Eco-Cultivos S.A. de C.V. ("Eco-
Cultivos"); Ranchos Los Pinos S. de R.L. de C.V. ("Los Pinos"); Administradora
Horticola del Tamazula ("Tamazula"); and Agricola Yory, S. de P.R. de. R.I.
("Yory"). Remand Redetermination at 10. These respondents represented the
largest exporters of fresh tomatoes from Mexico at the time of the initial
investigation. Id. at 10–11. Because a significant amount of time had passed since
the initial investigation, Commerce reopened the administrative record and
solicited additional information on the operating status and ownership of the
original mandatory respondents, changes to the Mexican tomato industry since the
1995–1996 period of investigation, and changes to the American tomato industry
since the 1995–1996 period of investigation. Id. at 9; Commerce's Letter All
Interested Parties Re: Fresh Tomatoes from Mexico: Request Info.

     Commerce received comments and information on behalf of Eco-Cultivos,
Yory, Echavarria, Los Pinos, and Camalu. Id. at 11; Pl.-Intervs.' Resp. Request
Info. Plaintiff-Intervenors submitted that Eco-Cultivos was no longer operational
and that Plaintiff-Intervenors purchased Eco-Cultivos' greenhouse assets in 1999.
Remand Redetermination at 11–12; Pl.-Intervs.' Resp. Request Info. at 5.
Consolidated Plaintiffs informed Commerce that Yory, Echavarria, and Los Pinos
were no longer in operation. Remand Redetermination at 12. Two current

suspension agreement signatories acquired certain of Yory's assets and another

signatory acquired Echavarria's assets.  Id.  Los Pinos merged with a current

signatory.  Id.  Consolidated Plaintiffs also advised that Camalu continued to

operate and had the same ownership structure as it did during the initial

investigation.  Id.  No party provided information on the current operating status

and ownership of Lomeli or Tamazula.  Id. at 13.  Commerce noted information

from the 2002 investigation reflecting that Cultivos and Lomeli were no longer in

operation and recently submitted information confirming that Camalu was still

operational.  Id.

Based on the information available, Commerce calculated dumping margins

for each of the seven original mandatory respondents.  Id.  Because Commerce was

unable to verify, in whole or in part, information on the record for Yory, Los Pinos,

Eco-Cultivos, and Lomeli, dumping margins for those companies were calculated

based on adverse facts available.  Id. at 13, 15–22.

Commerce explained that at the time of the initial investigation, its normal

methodology involved "zeroing," the practice of treating negative individual

margins as zero percent when calculating weighted-average antidumping duty

margins for exporters if the exporter's individual sales transactions were not

dumped.  Id. at 21.  Commerce abandoned the practice of zeroing after the initial

investigation and "implemented a modification to provide offsets for non-dumped

comparisons when using monthly average-to-average comparisons[.]" Id. at 21–
22; see Antidumping Proceedings, 77 Fed. Reg. 8101 (Dep't of Commerce Feb.
14, 2012) (calculation of the weighted-average dumping margin and assessment
rate in certain antidumping duty proceedings; final modification); Antidumping
Proceedings, 71 Fed. Reg. 77,722 (Dep't of Commerce Dec. 27, 2006) (calculation
of the weighted-average dumping margin during an antidumping investigation;
final modification).  In the Remand Redetermination, consistent with its current
practice, Commerce did not apply zeroing.  Remand Redetermination at 22.

        Though not a part of Commerce's normal methodology at the time of the
initial investigation, Commerce conducted a differential pricing analysis on
remand to determine which comparison method to apply.  Id.  Commerce applied
the average-to-transaction method to U.S. sales for Camalu and Echavarria that
passed the Cohen's d test component of its differential pricing analysis and the
average-to-average method to U.S. sales that did not pass the Cohen's d test
component of its differential pricing analysis.  Id. at 25–26.  Commerce applied the
average-to-average method for all U.S. sales in calculating Tamazula's weighted-
average dumping margin.  Id. at 26.  Commerce calculated the all-others rate based
on the weighted-average of the estimated weighted-average dumping margins
calculated for Camalu, Echavarria, and Tamazula in accordance with 19 U.S.C.
§ 1673d(5)(A).  Id. at 27.

Commerce acknowledged that the U.S. market for fresh tomatoes had changed since the initial investigation.  Id.  Based on data from U.S. Customs and Border Protection, Commerce determined that imports of specialty tomatoes had increased.  Id. at 27, App. II.  Commerce also noted that sales of fresh tomatoes at the time of the initial investigation were predominantly round tomatoes.  Id. at 27–28 (citing Fresh Tomatoes from Mexico, USITC Inv. No. 731-TA-747 (Preliminary), USITC Pub. No. 2967 at I-2 (May 1996)).  Commerce requested additional information on the changed circumstances in the Mexican and United States fresh tomato industries since the original investigation.  Id. at 28; Letter All Interested Parties Re: Fresh Tomatoes from Mexico: Request Info. at 2.  The comments provided to Commerce indicated an increase in demand for Roma tomatoes and that several varieties of specialty tomatoes now on the market did not exist at the time of the initial investigation.  Remand Redetermination at 28–29.  Party comments also reflected changes in growing techniques and market demands, such as a shift by Mexican producers to greenhouses and other protected agricultural techniques.  Id. at 29; Pl.-Intervs.' Resp. Request Info. 8–10, 16–17.

In the Remand Redetermination, Commerce acknowledged that the sales and cost data from the original investigation did not represent the current fresh tomatoes industry and market, and Commerce determined that it was not able to address the issue without using more contemporaneous data.  Remand

Redetermination at 29–30.  Based on its understanding of the Court's remand

order, Commerce relied on the 1995–1996 data provided by the original

respondents.  Id. at 30.  Commerce compared tomatoes sold in the home market

and tomatoes sold to the United States with identical varieties of tomatoes.  Id.  If

no identical tomato type was available, Commerce compared United States sales to

a normal value based on constructed value.  Id.

No party challenges Commerce's methodology or calculations in the

Remand Redetermination.  Pls.' Br. at 2; Consol. Pls.' Br. 2–4; Pl.-Intervs.' Br. at

2; Def.'s Br. at 4–5; Def.-Interv.'s Br. at 2–3.  Consistent with the Court's order in

Bioparques IV, Commerce resumed its investigation from the point of its 1996

Preliminary Determination and calculated its dumping margins based on the

evidence available for the original mandatory respondents during the original

period of investigation.  Bioparques IV, 48 CIT at __, 698 F. Supp. 3d at 1276.

The Court sustains Commerce's Remand Redetermination as supported by

substantial evidence, in accordance with law, and consistent with the Court's order

on remand.

## II.    Plaintiff-Intervenors' Claim

Plaintiff-Intervenors argued before Commerce that they were entitled to an

individual calculated dumping margin based on the current market because

Plaintiff-Intervenors did not exist during the initial investigation, and because

certain produce, export, and import varieties of tomatoes did not exist during the initial period of investigation.  Remand Redetermination at 31–32; Pl.-Intervs.' Cmts. Draft Remand Redetermination at 3.  Plaintiff-Intervenors argued that changes in the commercial and market conditions that have occurred since the initial period of investigation warranted a changed circumstances review.  Remand Redetermination at 32; Pl.-Intervs.' Cmts. Draft Remand Redetermination at 3. Plaintiff-Intervenors also argued that they qualified as new shippers for purposes of obtaining an individual dumping margin.  Remand Redetermination at 32; Pl.-Intervs.' Cmts. Draft Remand Redetermination at 3.

In the Remand Redetermination, Commerce determined not to initiate a new shipper review or changed circumstances review for Plaintiff-Intervenor.  Remand Redetermination at 32.  Commerce reasoned that 19 U.S.C. § 1675(a)(2)(B) and (b)(1) require the existence of an antidumping duty order as a prerequisite for initiating either of the requested reviews.  Id. at 32–33; see 19 U.S.C. §§ 1675(a)(2)(B), (b)(1).  Commerce acknowledged that Section 1675(b)(1)(B) provides that Commerce may initiate a changed circumstances review of a suspension agreement but determined that the Court's remand was limited to the scope of the Final Determination, which did not include the suspension agreement. Id. at 33.  Plaintiff-Intervenors now challenge Commerce's determination to not conduct a changed circumstances or new shipper review.  Pl.-Intervs.' Br. at 4–7.

Plaintiffs and Defendant challenge Plaintiff-Intervenors' ability to bring their asserted claim in this action, arguing that the Court lacks jurisdiction over the claims and that Plaintiff-Intervenors lack standing.  Pls.' Br. at 3; Def.'s Br. at 5–7.

## A.    Jurisdiction

As an initial matter, Plaintiffs and Defendant contend that the Court lacks jurisdiction to consider Plaintiff-Intervenors' claims.  Pls.' Br. at 3; Def.'s Br. at 5–6.  Whether a court has subject matter jurisdiction to hear an action is a threshold inquiry.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  The U.S. Court of International Trade, like all federal courts, is one of limited jurisdiction and is "presumed to be 'without jurisdiction' unless 'the contrary appears affirmatively from the record.'"  DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (quoting King Iron Bridge & Mfg. Co. v. Otoe Cty., 120 U.S. 225, 226 (1887)).  The party invoking federal court jurisdiction bears the burden of establishing it and must allege sufficient facts to establish the court's jurisdiction.  Id.

At the time of filing its claims, a party is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support[.]"  USCIT R. 8(a)(1); Fed. R. Civ. P. 8(a)(1).  In the Amended Complaint, Plaintiffs asserted that the Court has jurisdiction over this matter under 28 U.S.C. § 1581(c).  Am. Compl.

Consol. Court No. 19-00204                                                    Page 22

¶ 2; see also Bioparques II, 31 F.4th at 1348.  Plaintiff-Intervenors have not alleged

a new theory of jurisdiction for its claims.  See Pl.-Intervs.' Part. Consent Mot.

Interv. Out Time; Pl.-Intervs.' Br.

        28 U.S.C. § 1581(c) provides the U.S. Court of International Trade with

exclusive jurisdiction over civil actions commenced under 19 U.S.C. § 1516a to

challenge certain final decisions reached in antidumping duty proceedings.  28

U.S.C. § 1581(c); see also 19 U.S.C. § 1516a.  Though the final results of a new

shipper review fall within the scope of Section 1516a, the statute does not

expressly grant subject matter jurisdiction over actions contesting Commerce's

decision not to initiate or conduct a new shipper review.  19 U.S.C.

§ 1615a(a)(2)(B)(iii); see Qingdao Barry Flooring Co. v. United States, 40 CIT __,

__, 190 F. Supp. 3d 1274, 1276 (2016) ("[N]othing in 19 U.S.C. § 1516a or 28

U.S.C. § 1581(c) grants the court subject matter jurisdiction of a claim that

Commerce unlawfully has refused to initiate or refused to conduct a new shipper

review.").

        The Court concludes that Plaintiff-Intervenors' challenge to Commerce's

denial to initiate a changed circumstances review cannot be brought under 28

U.S.C. § 1581(c), though subject matter jurisdiction could exist within the Court's

residual jurisdiction under 28 U.S.C. § 1581(i).  See 28 U.S.C. § 1581(i).  Section

1581(i) provides, in relevant part: "the Court of International Trade shall have

exclusive jurisdiction of any civil action commenced against the United States, its

agencies, or its officers, that arises out of any law of the United States providing

for . . . administration and enforcement with respect to the matters referred to in

subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this

section." 28 U.S.C. § 1581(i)(1)(D). Jurisdiction under subsection (i) "may not be

invoked when jurisdiction under another subsection of [Section] 1581 is or could

have been available, unless the remedy provided under that other subsection would

be manifestly inadequate." Ford Motor Co. v. United States, 688 F.3d 1319, 1323

(Fed. Cir. 2012) (internal quotation omitted). Jurisdiction is not available under 28

U.S.C. § 1581(c), but the Court could assert jurisdiction over Plaintiff-Intervenors'

claims under 28 U.S.C. § 1581(i). See Tr. Bankr. North American Rubber Thread

Co. v. United States, 31 CIT 2040, 2042, 533 F. Supp. 2d 1290, 1293 (2007);

Qingdao Barry Flooring Co., 40 CIT at __, 190 F. Supp. 3d at 1276.

Because Plaintiff-Intervenors did not file their own complaint in this case

alleging an action under 28 U.S.C. § 1581(i), however, and instead are relying on

the Amended Complaint filed by Plaintiffs under 28 U.S.C. § 1581(c), Plaintiff-

Intervenors have not established subject matter jurisdiction to challenge

Commerce's decision to not initiate or conduct a new shipper review under 28

U.S.C. § 1581(i). Moreover, no antidumping duty order has yet been issued, and

Plaintiff-Intervenors will be able to request a new shipper review or changed

circumstances review if and when an antidumping duty order is issued. Plaintiff-Intervenors' claims in this action will be dismissed. USCIT R. 12(b)(1); Fed. R. Civ. P. 12(b)(1).

### B.    Standing

Defendant contends that Plaintiff-Intervenors lack Article III standing to challenge Commerce's denial of a changed circumstance or new shipper review because the relief is distinct from that sought by Plaintiffs and Consolidated Plaintiffs. Def.'s Br. at 6–7. Defendant further argues that Plaintiff-Intervenors' claims impermissibly expand the original claims. Id. at 7–8.

An intervenor must establish Article III standing in order to pursue a relief that is different from the relief sought by the parties with standing. Town of Chester v. Laroe Estates, Inc., 581 U.S. 433, 440 (2017). "When the movant for intervention seeks to intervene on the side of the plaintiff, the motion must state the movant's standing, and must state the administrative determination to be reviewed and the issues that the intervenor desires to litigate." USCIT Rule 24(c)(2). The Court granted Plaintiff-Intervenors' motion to intervene on the belief that Plaintiff-Intervenors' claims related to the information they provided during the remand that was relied upon by Commerce in reaching the Remand Redetermination. Bioparques V, 48 CIT at __, 745 F. Supp. 3d at 1325–26. The arguments raised in Plaintiff-Intervenors' comments opposing the Remand Redetermination are not

related to Commerce's use of the information provided during remand or the

arguments raised by other Parties with standing.  See Pl.-Intervs.' Br.; Am. Compl.

Plaintiff-Intervenors must independently establish standing to bring their claims.

Town of Chester, 581 U.S. at 440.

In order to establish Article III standing, a party must demonstrate: (1) that it

has suffered "an injury in fact," that is "an invasion of a legally protected interest

which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical;" (2) a "causal connection between the injury and the

conduct complained of;" and (3) "it must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  Lujan v.

Defs. of Wildlife, 504 U.S. 555, 561–62 (1992) (internal quotations and citations

omitted).  Plaintiff-Intervenors suggest that they have suffered an injury by not

receiving an individually calculated dumping margin.  Pl.-Intervs.' Br. at 4–7.

Other than general statements regarding how the tomato industry has changed and

how Plaintiff-Intervenors and some of their products did not exist at the time of the

initial investigation, Plaintiff-Intervenors have not demonstrated that application of

the all-others rate applicable to them has resulted in an injury.  In fact, only one of

the individual calculated average-dumping margins established in the Remand

Redetermination is less than the all-others rate.  Remand Redetermination at 36.

The Court also notes that no antidumping duties have been assessed since the 2019

Suspension Agreement came into effect. Bioparques II, 31 F.4th at 1338 ("An

antidumping duty order based on the final determination has not issued, however,

because the 2019 Agreement remains in effect.").  Furthermore, Plaintiff-

Intervenors are not precluded from seeking a new shipper review or changed

circumstances review if an antidumping duty order is issued.  19 U.S.C.

§§ 1675(a)(2)(B)(i), (b)(1)(A).  Plaintiff-Intervenors have not demonstrated that

they have suffered an injury in this case.

Plaintiff-Intervenors have also failed to demonstrate that a favorable

decision of the Court would cure any injury they might have suffered.  Plaintiff-

Intervenors are asking the Court to direct Commerce to calculate individual

dumping margins for companies that did not exist at the time of the initial

investigation.  Pl.-Intervs.' Br. at 7.  This relief is antithetical to the Court's prior

holding in Bioparques IV that Commerce was required by statute to resume the

initial investigation and base its determination on the original mandatory

respondents and data collected.  See Bioparques IV, 48 CIT at __, 698 F. Supp. 3d

at 1276.  Because Plaintiff-Intervenors have not shown a cognizable injury that is

likely to be redressed by a favorable decision of the Court, standing has not been

established for Plaintiff-Intervenors' claims.

## CONCLUSION

For the foregoing reasons, the Court sustains Commerce's <u>Remand Redetermination</u> as supported by substantial evidence and in accordance with law. Accordingly, it is hereby

**ORDERED** that Commerce's <u>Redetermination Pursuant to Court Remand Order</u>, ECF Nos. 120, 121, determining weighted-average dumping margins based on the 1995–1996 data and that Plaintiff-Intervenors are not entitled to a new shipper or changed circumstances review, is sustained.

Judgment will be entered accordingly.

<u>      /s/ Jennifer Choe-Groves      </u>
Jennifer Choe-Groves, Judge


Dated:    <u>   April 17, 2025   </u>
               New York, New York